# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Butler*, 2013 IL App (1st) 120923

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KENDRICK BUTLER, Defendant-Appellant. |
| District & No. | First District, First Division<br>Docket No. 1-12-0923 |
| Filed | June 28, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The 80-year sentence imposed on defendant for first-degree murder was upheld over his contention, *inter alia*, that the firearm enhancement applied to him was unconstitutionally vague, since the sentence was within the statutory range, the crime was heinous, the scope of the sentencing range under the enhancement is clear and definite, the standards for imposing the enhancement are not vague, and the argument that the enhancement statute permits "double enhancement" has been rejected by the Illinois Supreme Court. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 07-CR-12418; the Hon. Rosemary Grant Higgins, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal     Michael J. Pelletier, Alan D. Goldberg, and Christopher Kopacz, all of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Michelle Katz, and Tasha-Marie Kelly, Assistant State's Attorneys, of counsel), for the People.

Panel     JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.

Justices Rochford and Delort concurred in the judgment and opinion.

**OPINION**

¶ 1     This appeal arises from a March 14, 2012 order entered by the circuit court of Cook County which sentenced defendant-appellant Kendrick Butler (Butler) to 80 years' imprisonment for first-degree murder. On appeal, Butler argues that: (1) the trial court abused its discretion in imposing an 80-year sentence because it failed to properly consider significant mitigating factors; and (2) the firearm sentence enhancement statute that was applied to his sentence is unconstitutionally vague on its face and as applied to him. For the following reasons, we affirm the judgment of the circuit court of Cook County.

¶ 2     BACKGROUND

¶ 3     On May 3, 2006, Gregory Dugar (Gregory) sustained a gunshot wound to the head and died as a result of his injury. On February 8, 2007, Butler was arrested in Cedar Rapids, Iowa, on a matter unrelated to this case. The Cedar Rapids police informed the Chicago police that Butler was in custody. On May 10, 2007, Chicago police detectives Sean Forde (Detective Forde) and Victor Kubica (Detective Kubica) traveled to Cedar Rapids, Iowa, to complete the extradition process. Butler was placed under arrest and transported back to Chicago. Butler was charged with six counts of first-degree murder and one count of aggravated discharge of a firearm. The State proceeded to trial on four counts of first-degree murder. Following a jury trial, Butler was found guilty of first-degree murder. The circuit court of Cook County sentenced Butler to 50 years' imprisonment on count I of the indictment pursuant to section 9-1(a)(1) of the Criminal Code of 1961 (720 ILCS 5/9-1(a)(1) (West 2006)), which charged first-degree murder for intentionally or knowingly killing Gregory while armed with a firearm. The trial court also sentenced Butler to 30 years' imprisonment on count V of the indictment pursuant to section 9-1(a)(1) (720 ILCS 5/9-1(a)(1) (West 2006)), which charged first-degree murder for intentionally or knowingly killing Gregory with a firearm and personally discharging a firearm that proximately caused Gregory's death.

¶ 4      Subsequently, Butler filed a direct appeal arguing multiple claims of ineffective assistance of counsel, as well as a claim that the trial court improperly imposed sentences for two counts of first-degree murder when there was only one victim. *People v. Butler*, No. 1-09-0893 (2011) (unpublished order under Supreme Court Rule 23). This court affirmed Butler's conviction, but held that Butler's sentence was erroneous and found that the trial court may have intended the 30-year sentence to be a mandatory enhancement rather than a separate sentence. Thus, this court remanded the matter to the trial court for resentencing. On remand, the trial court resentenced Butler to 50 years' imprisonment on count V, and an additional 30 years' imprisonment as a mandatory sentence enhancement to be served consecutively for personally discharging a firearm that proximately caused Gregory's death pursuant to section 5-8-1(a)(1)(d)(iii) of the Unified Code of Corrections (Code) (730 ILCS 5/5-8-1(a)(1)(d)(iii) (West 2012)). This appeal followed.

¶ 5      The following facts were established by Butler's January 22, 2009 trial and his direct appeal. At 8 p.m. on May 3, 2006, Paul Allen (Allen) was driving his vehicle with Kyesha Kohnke (Kohnke) in the front seat, and Brian Smith (Smith) and Gregory in the backseat. Allen stopped at a stop sign at the intersection of Maypole and LaCrosse Avenues in Chicago. As Allen proceeded through the intersection, approximately five gunshots were fired at the back of his vehicle. Allen and Kohnke testified that they did not see who fired the shots. Gregory sustained a gunshot wound to the head and later died as a result of his injury.

¶ 6      Eric Robertson (Robertson) testified that on May 3, 2006, he was riding in Chanell Richmond's (Richmond) vehicle with Richmond and Tremaine Brown (Brown). Robertson stated that Brown's birthday was that day, and that the group was smoking marijuana. Robertson testified that at some point, the group drove to the intersection of Maypole and LaCrosse. When the group arrived at the intersection, Robertson got out of the vehicle and stood on the corner. Robertson testified that Derrick Young (Young) was standing on the corner with him. Robertson testified that he did not remember anything after talking with Young. Robertson stated that he did not remember talking with Chicago police, an assistant State's Attorney, or a grand jury about the shooting on May 3, 2006.

¶ 7      Detective Kubica testified that on May 7, 2006, he and Detective Forde interviewed Robertson. Detective Kubica testified that Robertson stated that he was scared and did not want to become a "snitch." Later during the interview, Robertson told Detective Kubica that he saw a "red box type vehicle" approach the intersection of Maypole and LaCrosse. Robertson stated that he saw Young sitting on a bicycle at the intersection. Detective Kubica testified that Robertson stated that as he approached Young, he heard a gunshot. Robertson told Detective Kubica that he turned and saw Butler standing behind the red vehicle. Detective Kubica testified that Robertson later identified Butler in a photo lineup, as the shooter.

¶ 8      Assistant State's Attorney Bonnie Greenstein (ASA Greenstein) testified that on June 6, 2007, she presented Robertson to the grand jury. Robertson's grand jury testimony was admitted into evidence at trial. In his grand jury testimony, Robertson stated that he initially told police that he was not near the intersection of Maypole and LaCrosse on May 3, 2006. However, he testified that he later told police that he was near the intersection on May 3, 2006, and that he saw Young at the intersection. Robertson stated that he heard a gunshot and

then turned and saw Butler shooting at a red four-door vehicle. Robertson told ASA Greenstein that the police had treated him well and no one had made any threats or promises in return for his grand jury testimony.

¶ 9    Brown testified that at 8 p.m. on May 3, 2006, he was in a vehicle with Robertson and Richmond. Brown testified that he exited the vehicle at the intersection of Maypole and LaCrosse. Brown stated that Young and other individuals were standing on the corner. According to Brown, Butler arrived at the intersection shortly thereafter. Brown testified that he saw a maroon vehicle approach the intersection. Brown stated that he saw three males and one female inside the maroon vehicle. Brown testified that he did not remember what happened after the maroon vehicle reached the intersection. He stated that he did not remember hearing any gunshots being fired. However, he later testified that he heard gunshots when he was two houses away from the intersection. Brown testified that he did not see the person who was firing the gunshots.

¶ 10    Detective Forde testified that on May 5, 2006, Brown was arrested and brought to the police station to be interviewed. Detective Forde testified that he and Detective Kubica had a videotaped conversation with Brown, during which he stated that he saw Butler shoot at a vehicle at the intersection of Maypole and LaCrosse. Detective Kubica testified that Brown identified Butler as the shooter in a photo lineup.

¶ 11    Assistant State's Attorney Art Heil (ASA Heil) testified that on September 28, 2006, he took Brown's handwritten statement. In his handwritten statement, Brown stated that earlier in the day on May 3, 2006, he heard from an unknown individual that Butler had been "jumped" by members of the Four Corner Hustlers street gang. Brown stated that he was a member of the Black P Stone street gang, and Butler was a member of the Mafia Insane Vice Lords street gang. Further, Brown stated that when he arrived at the intersection of Maypole and LaCrosse on May 3, 2006, Butler was on the north side of Maypole near some bushes. Brown, Robertson, and Young were across the street from Butler. Brown stated that he saw an old maroon vehicle approach the intersection. Brown recognized the vehicle as belonging to members of the Four Corner Hustlers street gang. Brown noticed that the vehicle contained three black males and one black female. Brown stated that Butler walked up to the rear of the maroon vehicle and began firing a gun at the people inside the vehicle. Brown stated that Butler fired the gun five or six times. Brown saw the head of the male passenger in the back seat "slump down." Brown stated that the maroon vehicle then drove away, and Butler ran westbound down Maypole.

¶ 12    On October 27, 2006, Brown appeared in front of a grand jury. Assistant State's Attorney Francisco Lamas (ASA Lamas) testified regarding Brown's grand jury testimony, which was consistent with his handwritten statement taken on September 28, 2006.

¶ 13    Shawn Jenkins (Jenkins) then testified for the State. Jenkins testified that on October 22, 2006, he was arrested at his residence. He stated that he spoke to police after he was arrested. Jenkins testified that he did not give the police any information regarding the shooting on May 3, 2006. Jenkins denied that he had a telephone conversation with Butler a week after the shooting. Jenkins also denied that Butler stayed at his residence for a period of time in 2006. Jenkins stated that Butler did not tell him anything about the shooting on May 3, 2006.

¶ 14    Detective Kubica testified that he and Detective Forde questioned Jenkins about the shooting. Jenkins told Detective Kubica that after the shooting, Butler called Jenkins from a Greyhound bus station and asked if he could move in with Jenkins for a while. Jenkins told Detective Kubica that he allowed Butler to live at his residence until September 2006. Jenkins stated that Butler admitted that on May 3, 2006, he fired four or five gunshots at a vehicle. Butler told Jenkins that he may have fired into the wrong vehicle, and may have killed the wrong person. Jenkins told Detective Kubica that he overheard a telephone conversation between Butler and an individual named Ken. Jenkins stated that Butler told Ken to get rid of the gun that he used in the shooting.

¶ 15    Assistant State's Attorney Mary Innes (ASA Innes) testified that on October 23, 2006, she took Jenkins' handwritten statement. Jenkins' handwritten statement was admitted into evidence. ASA Innes testified regarding Jenkins' handwritten statement which was largely consistent with Detective Kubica's testimony. ASA Lamas testified that on October 23, 2006, he presented Jenkins to the grand jury. ASA Lamas published Jenkins' grand jury testimony in open court, which was largely consistent with the handwritten statement taken by ASA Innes and Detective Kubica's testimony.

¶ 16    At the close of evidence, the jury found Butler guilty of first-degree murder. Additionally, the jury found that during the commission of the offense, Butler personally discharged a firearm that proximately caused the death of Gregory. On March 12, 2009, Butler filed a motion for new trial which the trial court denied.

¶ 17    On March 13, 2009, the trial court held a sentencing hearing. The trial court considered many factors in aggravation and mitigation. In aggravation, the State presented the testimony of multiple witnesses including Phyllis Dugar (Phyllis), Gregory's mother. Phyllis read from a prepared statement and stated that Gregory was a beloved family member who aspired to play basketball in college. Phyllis stated that her entire family was affected by Gregory's death, particularly Gregory's sister, who considered Gregory to be a father figure. Additionally, the State admitted into evidence Butler's two prior felony convictions for possession of a controlled substance with intent to deliver, as well as two adjudications of delinquency for drug-related offenses when Butler was a minor. The State argued that Butler fired a gun at the vehicle without knowing whether the passengers inside the vehicle were his enemies. The State contended that Butler killed the wrong person and that Gregory had no opportunity to protect himself from the gunfire. The State requested a substantial sentence.

¶ 18    In mitigation, defense counsel argued that Butler is a product of traumatic social history. Defense counsel stated that when Butler was four years old, he witnessed his mother commit murder. Butler's mother was sentenced to 60 years' imprisonment, and he was raised by two different fathers and his grandmother. Defense counsel also stated that Butler suffers from post-concussion syndrome as a result of getting beaten while he was in custody. Defense counsel contended that Butler has rehabilitative potential and requested that the trial court impose the minimum sentence.

¶ 19    In imposing Butler's sentence, the record discloses that the trial court considered all factors in aggravation and mitigation including testimony from all the witnesses at the

sentencing hearing, and Butler's prior felony convictions. The trial court also considered Butler's history as a juvenile. The trial court commented that Butler was given numerous opportunities to rehabilitate himself, however, he failed to take advantage of any of those opportunities. The trial court acknowledged that Butler has had a regrettable life, and that his only stability in life was the care he received from his grandmother. However, the trial court stated that it was very moved by the statements of Gregory's family members who indicated that he was an innocent victim who did not participate in gangs or narcotics. The trial court noted that at the sentencing hearing, Butler denied his involvement in the shooting rather than showing remorse for his actions. The court suggested that the lack of remorse did little to convince the court of his potential for rehabilitation. The trial court concluded that Butler's offense was especially heinous because Gregory was an innocent victim, and the loss of his life will impact the lives of his family members forever. Thus, the trial court sentenced Butler to 50 years' imprisonment on count I of the indictment, and 30 years' imprisonment on count V of the indictment.

¶ 20    On March 25, 2009, Butler filed a motion to reconsider his sentence, which the trial court denied. Subsequently, Butler filed a direct appeal. This court affirmed Butler's conviction, but remanded the matter to the trial court for resentencing.

¶ 21    On remand, the trial court held a resentencing hearing on March 14, 2012. The trial court stated that it was considering all of the factors presented in aggravation and mitigation, including the statements made by the attorneys for both parties at the resentencing hearing. The trial court acknowledged that Butler did not make a statement in remorse because he wanted to preserve his appeal rights. The trial court stated that it would not use the fact that Butler failed to make a statement in contrition in determining the sentence. The trial court resentenced Butler to reflect 50 years' imprisonment on count V, and 30 years' imprisonment as a mandatory sentence enhancement to be served consecutively for personally discharging a firearm that proximately caused Gregory's death. Thus, Butler was again sentenced to a total of 80 years' imprisonment.

¶ 22    Also, on March 14, 2012, Butler filed a motion to reconsider his sentence which the trial court denied. On that same day, Butler filed a timely notice of appeal. Therefore, this court has jurisdiction to consider Butler's arguments on appeal pursuant to Illinois Supreme Court Rule 603 (eff. Feb. 6, 2013) and Rule 606 (eff. Feb. 6, 2013).

¶ 23                                    ANALYSIS

¶ 24    We determine the following issues on appeal: (1) whether the trial court abused its discretion in imposing an 80-year sentence because it failed to properly consider significant mitigating factors; and (2) whether the firearm sentence enhancement statute that was applied to Butler's sentence is unconstitutionally vague on its face and as applied to him.

¶ 25    We first determine whether the trial court abused its discretion in imposing an 80-year sentence because it failed to properly consider significant mitigating factors.

¶ 26    Butler argues that the 80-year sentence imposed by the trial court is excessive because the court failed to consider significant mitigating factors. Specifically, Butler argues that the trial court failed to give adequate weight to Butler's youth, his childhood marred by violence,

-6-

his mental health problems, and his lack of a significant criminal background. Butler contends that 80 years amounts to a life sentence for him, and that the sentence is excessive because it must be served in its entirety. He asserts that the sentence is also excessive because 80 years is nearly twice the minimum sentence that could have been imposed. Butler argues that his youth at the time of the shooting shows that he has not fully matured and has an undeveloped sense of responsibility. Also, Butler contends that his lack of a violent criminal history justifies a lesser sentence as his prior convictions were for drug-related offenses. Butler points out that prior to the shooting, he was diagnosed with depression and anxiety disorder, and while in custody he suffered a beating that caused post-concussion syndrome. He asserts that his mental health problems also justify a lesser sentence. Further, he points out that he endured a childhood surrounded by violence at an early age as, at the age of four, he witnessed his mother commit murder. Butler argues that his sentence fails to give weight to his social history.

¶ 27　　Butler argues that although the offense in this case is a heinous one, that is only one factor to consider when imposing a sentence. He contends that the legislature recognized the seriousness of the crime in setting the minimum term for his offense at 45 years' imprisonment. Butler argues that if he were sentenced to a term closer to 45 years, he would still serve the vast majority of his adult life in prison. He asserts that a sentence of approximately 45 years would offer him an incentive for rehabilitation and a possibility of restoration to society. Thus, Butler requests that this court reduce his sentence, or in the alternative, remand this case for a new sentencing hearing.

¶ 28　　In response, the State argues that the trial court properly exercised its discretion in sentencing Butler to 80 years' imprisonment. Specifically, the State argues that the record clearly indicates that the trial court considered all of the factors in aggravation and mitigation prior to imposing the sentence. The State contends that the sentence was well within the statutory limits provided by the legislature. The State asserts that the trial court's sentencing decision is entitled to great deference, and the reviewing court may not rebalance the aggravating and mitigating factors presented to the trial court. The State argues that the trial court is presumed to have considered all relevant factors absent a contrary showing in the record, and in order to rebut this presumption the defendant must make an affirmative showing that the court did not consider relevant factors. The State asserts that Butler has pointed to nothing in the record which would indicate that the trial court did not consider relevant factors. Additionally, the State contends that the court is not obligated to give greater weight to a defendant's rehabilitative potential than to the seriousness of the offense, and the seriousness of the offense should be the most important factor considered in imposing a sentence. The State points out that during the initial sentencing hearing, the trial court specifically commented on each of the aggravating and mitigating factors before imposing Butler's sentence. The State argues that Butler's arguments on appeal are nothing more than a recitation of the mitigating factors presented to the trial court.

¶ 29　　Further, the State argues that the sentence in this case was justified due to the nature of the crime committed. The State contends that Butler murdered Gregory in cold blood, without knowing whether Gregory was his intended target. The State asserts that Gregory was an innocent victim who was unable to protect himself from Butler's attack. The State

argues that while Butler's personal history is tragic, it does not justify his actions or excuse him from punishment. Thus, the State argues that the trial court did not abuse its discretion in sentencing Butler to 50 years' imprisonment for the offense of first-degree murder, and 30 years' imprisonment for the mandatory firearm sentence enhancement.

¶ 30    It is well established that the trial court has broad discretionary powers in imposing a sentence, and the sentencing decision of the court is entitled to great deference. *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). The trial court is afforded great deference because it is in a better position than the reviewing court to determine the appropriate sentence. *Id*. "The trial judge has the opportunity to weigh such factors as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age." *Id*. Thus, the reviewing court cannot substitute its judgment for that of the trial court just because it would have weighed these factors differently. *Id*. Absent an abuse of discretion, the sentence imposed by the trial court may not be altered on review. *Id*. at 209-10. An abuse of discretion occurs when the trial court's decision is fanciful, arbitrary, or unreasonable to the degree that no reasonable person would agree with it. *People v. Ortega*, 209 Ill. 2d 354, 359 (2004).

¶ 31    A sentence imposed by the trial court is presumed to be proper. *People v. Boclair*, 225 Ill. App. 3d 331, 335 (1992). "A sentence within statutory limits will not be deemed excessive unless it is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense." *People v. Fern*, 189 Ill. 2d 48, 54 (1999). "The spirit and purpose of the law are promoted 'when a sentence reflects the seriousness of the offense and gives adequate consideration to the rehabilitative potential of the defendant.' [Citation.]" (Internal quotation marks omitted.) *Boclair*, 225 Ill. App. 3d at 335. There is a strong presumption that the trial court considered any evidence of mitigation presented to it. *People v. Trimble*, 220 Ill. App. 3d 338, 355-56 (1991). In order to rebut this presumption, the defendant must present some indication, other than the sentence imposed, that the trial court did not consider the mitigating evidence. *People v. Canet*, 218 Ill. App. 3d 855, 864 (1991).

¶ 32    In this case, the statutory range for Butler's sentence for first-degree murder was 20 to 60 years' imprisonment. 730 ILCS 5/5-4.5-20(a) (West 2012). In addition, a mandatory sentence enhancement of 25-years-to-natural-life imprisonment attached to his sentence because the jury found that he personally discharged a firearm that proximately caused Gregory's death. See 730 ILCS 5/5-8-1(a)(1)(d)(iii) (West 2012). The trial court sentenced Butler to consecutive terms of 50 years' imprisonment for first-degree murder, and 30 years' imprisonment for the mandatory firearm sentence enhancement, for a total of 80 years' imprisonment. At the initial sentencing hearing held on March 13, 2009, the trial court conducted lengthy proceedings in which it considered numerous factors in aggravation and mitigation. The trial court heard testimony from multiple witnesses, including Phyllis, who explained the immense emotional grief Gregory's family has suffered and will continue to suffer as a result of his death. Additionally, the trial court provided a very detailed explanation of its reasoning, highlighting each aggravating and mitigating factor and explaining that such factors were being considered in determining the length of Butler's sentence. Further, at the resentencing hearing held on March 14, 2012, the trial court indicated that it had once again considered every aggravating and mitigating factor presented

in both hearings and that it would not consider Butler's failure to make a statement in contrition. After careful deliberation, the trial court decided not to reduce the length of Butler's sentence.

¶ 33　　Although we acknowledge that Butler has had an unfortunate life, we are not persuaded by his argument that the trial court abused its discretion in imposing a sentence of 80 years' imprisonment. This court cannot substitute its judgment for that of the trial court, and we cannot say that the trial court's decision was unreasonable to the degree that no reasonable person would agree with it. As the State points out, Butler is unable to point to anything in the record that suggests that the trial court failed to consider any of the mitigating factors he presents. Absent a showing that the trial court failed to consider mitigating factors, the sentence is presumed to be proper. The evidence in this case shows that Butler fired gunshots into a vehicle containing four unsuspecting passengers, taking the life of one innocent passenger. Butler was not aware of the identities of any of the passengers, yet he fired into the vehicle with the intent to harm. This was a heinous crime that resulted not only in the loss of Gregory's life, but also impacted the lives of all his family members. While Butler's sentence is substantial, and we may have imposed a different sentence, that is not the criteria by which its propriety is measured. Importantly, the sentence falls squarely within the statutory range mandated by the legislature. Therefore, we hold that the trial court did not abuse its discretion in imposing a sentence of 80 years' imprisonment.

¶ 34　　We next determine whether the firearm sentence enhancement statute that was applied to Butler's sentence is unconstitutionally vague on its face and as applied to him.

¶ 35　　Butler argues that the 25-years-to-natural-life sentence enhancement that was attached to his sentence pursuant to section 5-8-1(a)(1)(d)(iii) of the Code is unconstitutionally vague on its face and as applied to him. Specifically, Butler argues that the statute is unconstitutionally vague because the broad sentencing range fails to appropriately guide judges, and encourages arbitrary and discriminatory sentencing based entirely on opinions and whims. Butler contends that the statute does not provide objective criteria as to where within the 25-years-to-life range a sentence should fall. Butler asserts that without statutory criteria, the imposition of a sentence within the applicable range is entirely up to the whim of a judge. Butler argues that the trial court should not be able to impose a sentence as serious as natural life imprisonment without explicit guidance regarding what factors should be considered in determining that such a sentence is merited. Butler notes that the legislature has provided aggravating factors that generally govern the imposition of sentences. However, Butler claims that it would be improper to use those same factors to first fashion the base sentence within the 20- to 60-year range, and then again apply those factors to justify a sentence enhancement of 25-years-to-life. Butler argues that because the statute does not provide criteria for determining how to enhance a defendant's sentence, the statute is unconstitutionally vague. Thus, Butler claims that his sentence enhancement of 30 years' imprisonment is void, and he requests that this court strike the sentence enhancement as unconstitutional. Alternatively, Butler requests that this court reduce his sentence enhancement to the statutory minimum of 25 years' imprisonment.

¶ 36　　In response, the State argues that the 25-years-to-natural-life sentence enhancement is not unconstitutionally vague. Specifically, the State argues that the statute clearly sets forth the

sentencing range permissible for courts in imposing the mandatory sentence enhancement. The State contends that the statute is designed to reflect the well-established principles of judicial discretion in sentencing. The State asserts that with every sentencing decision, there is great discretion given to the trial court as it is recognized that the trial court is in the best position to fashion an appropriate sentence. The State points out that Illinois courts have recognized that the legislature enacted firearm sentence enhancements to promote public health and safety, and to impose severe penalties that will deter the use of firearms in the commission of felonies. The State asserts that the statute clearly states that the sentence enhancement is mandatory, and the court has no discretion as to whether to impose the enhancement. Also, the State argues that the statute provides clear and unambiguous standards for its administration by sentencing courts. The State contends that the statute sets forth the permissible sentencing range while allowing for some discretion on the part of the trial court, so long as the sentence imposed falls within the carefully defined range. The State claims that although the sentencing range allows for a wide scope of sentences, that does not affect the question of whether it is sufficiently defined.

¶ 37    Further, the State argues that the 25-years-to-life sentence enhancement *does* provide criteria to guide the trial court in imposing a sentence. The State contends that the statute specifies a sliding scale of aggravating elements which must be present in order for the likewise sliding range in sentence to be imposed. For example, the sentence enhancement must be imposed when a defendant uses a firearm to cause injuries ranging from great bodily harm, permanent disability, permanent disfigurement, or death. 730 ILCS 5/5-8-1(a)(1)(d)(iii) (West 2012). Thus, the State argues that logically it follows that the low range of the 25-years-to-life sentence enhancement addresses the situations with lesser harm or injury, while the higher range of the sentence enhancement is designed for the most serious situations such as where a death occurred. Lastly, the State argues that Illinois courts have rejected Butler's argument that the statute improperly allows a court to use aggravating factors to first fashion the base sentence within the 20- to 60-year range, and then again apply those factors to justify a sentence enhancement of 25-years-to-life. Thus, the State argues that the 25-years-to-life sentence enhancement is not unconstitutionally vague.

¶ 38    The 25-years-to-life firearm sentence enhancement states, in pertinent part:

"(a) Except as otherwise provided in the statute defining the offense or in Article 4.5 of Chapter V, a sentence of imprisonment for a felony shall be a determinate sentence set by the court under this Section, according to the following limitations:

(1) for first degree murder,

* * *

[(d)](iii) if, during the commission of the offense, the person personally discharged a firearm that proximately caused great bodily harm, permanent disability, permanent disfigurement, or death to another person, 25 years or up to a term of natural life shall be added to the term of imprisonment imposed by the court." 730 ILCS 5/5-8-1(a)(1)(d)(iii) (West 2012).

¶ 39    In Illinois, "[a]ll statutes are presumed to be constitutional, and the burden of rebutting that presumption is on the party challenging the validity of the statute to demonstrate clearly

a constitutional violation." *People v. Greco*, 204 Ill. 2d 400, 406 (2003). A statute must be construed so as to affirm its constitutionality, if reasonably possible. *Id*. We review the constitutionality of a statute under the *de novo* standard of review. *Id*. at 407.

¶ 40   The Illinois Constitution prescribes that "[n]o person shall be deprived of life, liberty or property without due process of law nor be denied equal protection of the laws." Ill. Const. 1970, art. I, § 2. When a party challenges the constitutionality of a statute based on vagueness, it is a due process challenge examining whether the statute gives an ordinarily intelligent person the reasonable opportunity to know what is prohibited, so that he may act accordingly. *Greco*, 204 Ill. 2d at 415-16. "A statute is unconstitutionally vague if the terms are so ill-defined that the ultimate decision as to its meaning rests on the opinions and whims of the trier of fact rather than any objective criteria or facts." *People v. Pembrock*, 62 Ill. 2d 317, 322 (1976). When considering a vagueness challenge to a statute, the court considers many factors, including the language used, the legislative objective, and the evil the statute is designed to remedy. *Greco*, 204 Ill. 2d at 416. In the context of a vagueness challenge, the court applies a two-prong test and will determine that due process is satisfied if: "(1) the statute's prohibitions are sufficiently definite, when measured by common understanding and practices, to give a person of ordinary intelligence fair warning as to what conduct is prohibited, and (2) the statute provides sufficiently definite standards for law enforcement officers and triers of fact that its application does not depend merely on their private conceptions." *Id*.

¶ 41   In this case, Butler argues that the 25-years-to-life sentence enhancement only violates the second prong of the due process test in that it does not provide sufficiently definite standards for its application by triers of fact. We disagree. Although the sentence enhancement allows for a wide range of sentences, the scope of the sentencing range is clear and definite. When the enhancement is triggered, it must be applied for no less than 25 years and up to a term of natural life. The trial court has no discretion to decide whether or not to impose the sentence enhancement. Likewise, the standards for imposing the sentence enhancement are clearly defined. The sentence enhancement must be imposed when a defendant commits first-degree murder and discharges a firearm that proximately causes great bodily harm, permanent disability, permanent disfigurement, or death. Depending on the injury caused by the firearm used by the defendant, the trial court has discretion to impose a sentence in the range of 25-years-to-life. This allows the trial court to engage in fact-based determinations based on the unique circumstances of each case. The wide range of the sentence enhancement is appropriate because it is impossible to predict every type of situation that may fall under the purview of the statute. By defining the types of injuries that trigger the sentence enhancement, the legislature has provided the trier of fact with guidelines to apply when determining what sentence to impose within the boundaries of the statute. Therefore, the scope and standards of the 25-years-to-life sentence enhancement are not vague.

¶ 42   Butler argues that the injury standards (great bodily harm, permanent disability, permanent disfigurement, or death) do not provide the trial court with any guidance because all defendants who are guilty of first-degree murder will have caused a death. Thus, Butler argues that once the 25-years-to-life enhancement is triggered by the firearm having caused

the death, there are no standards to guide the decision of what sentence to impose. However, Butler's argument is flawed because he fails to contemplate situations in which the firearm is not the proximate cause of the victim's death. For example, there are countless conceivable situations where, during the commission of the offense of first-degree murder, a defendant could discharge a firearm that causes an injury, but then also completes some other action that causes the death of the victim. Such a situation would be wholly distinguishable from the case at bar in which the firearm used by Butler caused Gregory's death. In both cases the sentence enhancement would apply, but the trial court could impose a different sentence within the statutory range for each situation. We acknowledge Butler's concern that the 25-years-to-life sentence enhancement lacks detailed instruction as to where a trial court's sentence should fall within the broad range of the statute. Although confusion could be avoided if the legislature provided more explicit guidance regarding the imposition of the 25-years-to-life sentence enhancement, we cannot say that it is unconstitutionally vague. Thus, while Butler's argument has some reasonable elements, we are not persuaded by it for the reasons discussed.

¶ 43    Further, as the State points out, Butler's argument that the 25-years-to-life sentence enhancement statute allows for "double enhancement" has been rejected by our supreme court. See *People v. Sharpe*, 216 Ill. 2d 481 (2005). In *Sharpe*, the supreme court held:

"[T]he general rule against double enhancement is merely a rule of construction established by this court, which arises from the presumption that the legislature considered the factors inherent in the offense in setting the initial penalty for that offense. [Citation.] But where the legislature has made clear an intention to enhance the penalty for a crime, even in a way which might constitute double-enhancement, this court will not overrule the legislature." *Id*. at 530.

Thus, Butler's argument fails. Accordingly, we hold that the 25-years-to-life sentence enhancement is not unconstitutionally vague.

¶ 44    For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 45    Affirmed.