2019 IL App (1st) 170259-U

No. 1-17-0259

Order filed October 24, 2019

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 15 CR 4049 |
| | ) | |
| CHRIS MOORE, | ) | Honorable |
| | ) | Erica L. Reddick, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE LAMPKIN delivered the judgment of the court.
Presiding Justice Gordon and Justice Burke concurred in the judgment.

**ORDER**

¶ 1   *Held*: Defendant's 40-year sentence for first degree murder is affirmed over his contention that it was excessive.

¶ 2   Following a bench trial, defendant Chris Moore was convicted of first degree murder (720 ILCS 5/9-1(a)(1) (West 2014)) and sentenced to 40 years' imprisonment. On appeal, defendant contends his sentence is excessive. For the following reasons, we affirm.[1]

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

¶ 3    On February 8, 2015, Johnny Hudson discovered the body of Janice Coleman at the bottom of the stairs inside his residence. The medical examiner testified that Coleman had abrasions, contusions, and bruises on her head, neck, and body. She also had incise wounds on her forehead, three stab wounds on her cheek, one stab wound on her chin, and one fatal stab wound to her abdomen. The stab wound on Coleman's abdomen was eight inches deep and penetrated her renal vein. Coleman's cause of death was homicide by multiple stab wounds.

¶ 4    Defendant was charged with five counts of first degree murder and one count of unlawful restraint for stabbing Coleman. Because defendant does not challenge the sufficiency of the evidence to sustain his conviction, we recite only those facts necessary to our disposition.

¶ 5    Prior to trial, the State sought to admit other-crimes evidence from five prior incidents. The incidents included (1) a pending 2014 battery where defendant was charged with stabbing Satheal Rogers in the neck at a family party after drinking alcohol; (2) a 2008 conviction from Iowa for willful injury with serious injury and domestic assault with a weapon where defendant stabbed his girlfriend, Deborah Hunt, in the neck, back, and head after drinking alcohol; (3) a 2004 conviction from Iowa for "domestic assault second offense with injury," where defendant struck his girlfriend, Carolyn Gray, and strangled her; (4) an uncharged 2007 incident where defendant grabbed Gray's niece by her throat at a family party, threw her to the ground, and stabbed her in the stomach and hand after drinking alcohol; and (5) a 1993 conviction for aggravated battery, where defendant, after drinking alcohol, beat his girlfriend, Joan Thomas, and cut her face with a knife, which required 40 stitches. The court allowed the State to introduce other-crimes evidence from the 2014 and 2008 incidents.

¶ 6    The evidence at trial established that, on February 7, 2015, defendant was with Coleman, Eric Caffrey, and Hudson at Hudson's residence. They were drinking alcohol in Hudson's upstairs bedroom. At some point, Hudson was "really inebriated" and started "dozing off" but noticed defendant, Coleman, and Caffrey leaving the residence. At the front door, Caffrey heard defendant tell Coleman, "You have been drinking all day with me, now you're leaving with him [Caffrey], I don't think so." Caffrey spoke with Hudson's neighbor Dion Robinson for about 15 minutes and heard several bangs inside Hudson's residence. Coleman never followed Caffrey outside. Robinson observed defendant leave Hudson's residence approximately 30 to 40 minutes after Caffrey left. No one else exited Hudson's home.

¶ 7    The following morning Hudson discovered Coleman dead at the bottom of his stairs. He called 911, and later called defendant in the presence of the police. Defendant told Hudson that Coleman had fallen down the stairs and hit her head on a radiator. Defendant had called up to Hudson, but Hudson was passed out and did not respond. Defendant further stated that after receiving no response from Hudson, he stepped over Coleman's body and left the residence.

¶ 8    Defendant was arrested the following day with two spots of blood on his chin. Police inventoried the jacket he was wearing, which had five blood stains on it. Two of the five blood stains from defendant's coat matched Coleman's blood. A bloody knife was recovered from a box in Hudson's kitchen. The blood on the knife belonged to Coleman.

¶ 9    The State presented other-crimes evidence from Satheal Rogers, who testified that in November 2014, she was at her mother's house with other family members and defendant, who was a family friend. Defendant and Rogers' niece got into a physical altercation. Both parties had been drinking alcohol. Rogers asked defendant to leave the party. Defendant complied, but

returned five minutes later, stabbed Rogers in the neck with what felt to her like a knife, and then fled the house. Rogers received six to seven stitches and had a scar from the incident.

¶ 10    The court found defendant guilty of all counts and merged the charges into one count of first degree murder.

¶ 11    At sentencing, the court noted it had reviewed defendant's presentence investigation report (PSI). The PSI showed defendant reported that he was age seven or eight when he first tried alcohol and "decades ago" used both cocaine and heroin. Defendant's prior alcohol use affected his education, employment, and criminal background. He had previous court-ordered substance abuse treatment as a condition of probation and received substance abuse treatment twice in prison. The PSI further showed that defendant had a pending battery charge and nine prior convictions: (1) battery from 1981, resulting in 1 year of probation; (2) aggravated battery from 1994, resulting in a 2-year prison sentence; (3) attempted armed robbery, attempted robbery, and two counts of aggravated battery from 1996, resulting in a 16-year prison sentence; (4) domestic abuse assault from 2004 in Iowa, resulting in a 2-day sentence; (5) domestic abuse assault second offense from 2004 in Iowa, resulting in 120 days in jail and 1 year of probation; (6) assault on a peace officer from 2005 in Iowa, resulting in 240 days in jail and 1 year of probation; (7) domestic abuse assault from 2005 in Iowa, resulting in a 30-day sentence; (8) willful injury causing serious injury from 2009 in Iowa, resulting in a 10-year prison sentence; and (9) domestic abuse assault with a weapon from 2009 in Iowa, resulting in a 2-year prison sentence.

¶ 12    In aggravation, the State argued defendant's "long history of domestic abuse and battery and violence" warranted a substantial sentence "more towards the maximum." In recounting

defendant's criminal history, the State noted defendant was paroled from Iowa in April 2013, and 18 months later stabbed Rogers. Four months following that attack, defendant committed the murder in the instant case. Thus, the State argued the instant case was not an isolated incident. Rather, defendant's entire adult life had been spent in and out of prison for various violent offenses.

¶ 13    In mitigation, defense counsel argued defendant had various close family members die at a young age. Defendant had "self-reported" that he helped out neighbors, which demonstrated "good deeds and kindness to others," and obtained his GED though a "religious program." Counsel pointed out there was an indication that defendant "at least was an alcoholic and had some drug addiction." Although defendant had a prior history with gang involvement, he had dropped out of the gang. Defendant suffered from circulatory problems and was on blood pressure medication. With regard to the sentence, counsel pointed out that defendant was almost 60 years old and even the 20-year minimum would serve as a life sentence for him.

¶ 14    In allocution, defendant denied committing Coleman's murder and disputed the sufficiency of the evidence.

¶ 15    The court sentenced defendant to 40 years' imprisonment for first degree murder. The court considered the arguments made by the State and defense counsel, the facts of the case, defendant's statement, the PSI, and the need to restore defendant to useful citizenship. In particular, the court noted defendant's background showed "a consistent repeated pattern of violence," with "[b]attery upon battery and violence in particular against women." The court also considered defendant's "lengthy" and consistent criminal history. It expressed concern that "the very narrow circumstances in this exact case" were similar to other instances, where defendant

was among friends and family "sometimes celebrating with alcohol" and he "erupt[s]" with violence "out of proportion of anything that's occurring during the time."

¶ 16    Defendant filed a motion to reconsider sentence, arguing it was excessive and the court failed to consider mitigating evidence. The court denied defendant's motion and explained that the list of sentencing considerations it had listed on the record was not exhaustive. The court added:

> "And let me just further indicate the intention of the Court is that [defendant] be incapacitated. And that was in large measure. The Court does look to the significant history and pattern of violence. And so understanding his age, which was proffered that he is expecting to turn 60 this year, and with the sentence of 40 years, it was the Court's intention to primarily focus on incapacitation at this point."

¶ 17    On appeal, defendant contends his 40-year sentence is excessive in light of his age and longstanding issues with alcohol and addiction. He also claims that his sentence fails to allow any meaningful opportunity for rehabilitation.

¶ 18    When sentencing a defendant, a trial court must consider both "the seriousness of the offense" and "the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11; *People v. Wilson*, 2012 IL App (1st) 101038, ¶ 61. A trial court's sentence is afforded great deference on appeal and will not be reversed absent an abuse of discretion. *People v. Butler*, 2013 IL App (1st) 120923, ¶ 30 (citing *People v. Stacey*, 193 Ill. 2d 203, 209-10 (2000)). A sentence within the statutory range is not an abuse of discretion unless it is "manifestly disproportionate to the nature of the offense." *People v. Jackson,* 375 Ill. App. 3d 796, 800 (2007). In imposing an appropriate sentence, the trial court considers such factors as "a

defendant's history, character, and rehabilitative potential, along with the seriousness of the offense, the need to protect society, and the need for deterrence and punishment." *People v. Hernandez*, 319 Ill. App. 3d 520, 529 (2001).

¶ 19   Absent some affirmative indication to the contrary, other than the sentence itself, we presume the trial court considered all mitigating evidence before it. *People v. Jones*, 2014 IL App (1st) 120927, ¶ 55. The trial court, having observed the proceedings, is in the best position to weigh the relevant sentencing factors. *People v. Arze*, 2016 IL App (1st) 131959, ¶ 121. Accordingly, we do not substitute our judgment for that of the trial court merely because we would have balanced the appropriate sentencing factors differently. *People v. Alexander*, 239 Ill. 2d 205, 214 (2010).

¶ 20   Here, defendant was sentenced to 40 years' imprisonment. Because this sentence falls within the statutory range of 20 to 60 years for first degree murder (730 ILCS 5/5-4.5-20(a) (West 2014)), we presume the sentence was proper absent some indication that the court abused its discretion. *People v. Burton*, 2015 IL (1st) 131600, ¶ 36.

¶ 21   The record shows that in imposing sentence, the court considered counsels' arguments in aggravation and mitigation, defendant's statement, the PSI, defendant's criminal history, and the need to restore defendant to useful citizenship. In light of the court's consideration of the relevant sentencing factors, we decline defendant's invitation to reweigh those factors and conclude his sentence is excessive. *People v. Burke*, 164 Ill. App. 3d 889, 902 (1987) (where the trial court properly considered relevant sentencing factors, it is not the function of a reviewing court to rebalance those factors on appeal). We do not find the 40-year sentence, on its own, is manifestly disproportionate to the offense of murder, especially in light of defendant's

substantial criminal history. Defendant complains that the sentence is above the 20-year minimum, but his PSI shows the instant offense was defendant's tenth violent conviction. Further, the record shows defendant had a pattern of stabbing women: in 2009, he was sentenced to 10 years' imprisonment for stabbing his girlfriend in the head, back, and neck; following his release from prison in that case, defendant stabbed Rogers in the neck. Defendant's criminal history alone may warrant a sentence substantially above the minimum. *People v. Evangelista*, 393 Ill. App. 3d 395, 399 (2009).

¶ 22 Moreover, we are not persuaded by defendant's argument that the trial court failed to adequately consider mitigating evidence. The trial court explicitly stated on that record that it considered defense counsel's argument in mitigation and the PSI in imposing sentence, demonstrating it considered defendant's potential for rehabilitation. See *People v. Babiarz*, 271 Ill. App. 3d 153, 164 (1995) ("Where the sentencing court examines a presentence report, it is presumed that the court considered the defendant's potential for rehabilitation."). Critically, although defendant maintains his sentence failed to satisfy the constitutional objective of restoring him to useful citizenship, the PSI reflects that defendant's previous, more lenient sentences ranging from probation to 16 years' imprisonment, did not deter him from committing further violent offenses.

¶ 23 With respect to defendant's longstanding issues with drugs and alcohol, the record reflects that the trial court was aware of his history of substance abuse. Defense counsel argued defendant's alcoholism and drug use were mitigating, and the PSI reported defendant's prior alcohol and drug use. More importantly, and contrary to defendant's argument that the trial court failed to give "adequate consideration" to his history with alcohol and drugs, the court was not

required to accord defendant's substance abuse the weight he urges. See *People v. Montgomery,* 192 Ill. 2d 642, 674 (2000) ("[T]estimony about a defendant's history of alcohol and drug abuse is not necessarily mitigating. Although a defendant might urge this evidence in mitigation, as an explanation for his misconduct, the sentencer is not required to share the defendant's assessment of the information"). Defendant acknowledges this in his reply brief, but asserts that the court made no specific findings that it rejected the mitigating impact of his substance abuse. However, the trial court is not obligated to list each sentencing factor it considered on the record. *People v. Sauseda*, 2016 IL App (1st) 140134, ¶ 22. Further, the presence of mitigating factors did not require that the trial court impose the minimum allowable sentence. *People v. Jones*, 2014, IL App (1st) 120927, ¶ 55. Because defendant has failed to show that the trial court abused its discretion, we find no basis to disturb his 40-year sentence.

¶ 24    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 25    Affirmed.