2016 IL App (2d) 140357
No. 2-14-0357
Opinion filed May 9, 2016

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Winnebago County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 12-CF-2614 |
| KODY WALSH, | ) ) | Honorable John R. Truitt, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE JORGENSEN delivered the judgment of the court, with opinion.
Justices McLaren and Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, Kody Walsh, while seated in the Ford Explorer of Ebert Davison, a friend of his, shot Lori Daniels in the back of the head.  He then, at gunpoint, made Davison continue driving; forced Davison out of the car once they arrived at Davison's house in Beloit; led police on a high-speed chase, taking a selfie while doing so; and shot at police after crashing Davison's car and while fleeing the scene.  Based on these facts, a jury found defendant guilty of numerous offenses, including first-degree murder (720 ILCS 5/9-1(a)(1) (West 2012)), and he was sentenced to an aggregate term of 110 years' imprisonment.  On his murder conviction, the court sentenced defendant to 55 years' imprisonment and imposed an additional 45-year term based on the fact that defendant personally discharged a firearm that caused Daniels' death (firearm add-on) (see 730

ILCS 5/5-8-1(a)(1)(d)(iii) (West 2012)).   Defendant moved the court to reconsider his sentence, arguing that it was excessive, and the court denied the motion.   In this timely appeal, defendant argues that the court erred in imposing the 45-year firearm add-on, because (1) that term was based on unrelated firearm offenses, not the murder of Daniels; and (2) the court had already considered those offenses in assessing the 55-year sentence for the murder.   For the reasons that follow, we affirm.

¶ 2                                     I. BACKGROUND

¶ 3      At the sentencing hearing, the court stated that it considered the evidence presented at trial, the presentence investigation report (PSI) and its addendum, the evidence presented at the sentencing hearing, counsels' arguments, defendant's statement in allocution, and all of the applicable factors in aggravation and mitigation.   With regard to the factors in aggravation and mitigation, the court noted that it would "comment on some."

¶ 4      In mitigation, the court observed, "there isn't much."   In fact, the only factor the court mentioned was that defendant's imprisonment would "entail excessive hardship to his dependents," including defendant's five-year-old daughter.

¶ 5      In aggravation, the court noted, "the greatest factor in aggravation is not only some of the charged and uncharged conduct that the Court heard testimony from various witnesses today but the defendant's history of prior delinquency or criminal activity."   The court continued "that that factor, in and of itself, supports a sentence greater than the mandatory minimum, both with regard to the sentence on first[-]degree murder, the 25 to life range for personally discharg[ing] a firearm causing death," and other convictions for which defendant was being sentenced.

¶ 6      The court then gave a chronological account of some of the crimes with which defendant was involved.   The court observed that defendant's criminal activity began 3 months after he

turned 13. At that time, he committed an aggravated battery, he was given probation, and his probation was revoked when he failed to comply with numerous conditions of his probation. During the next year or so, defendant was convicted of mob action, two aggravated batteries, aggravated assault, and resisting a peace officer. He was given probation in those cases and again failed to follow the conditions of probation.

¶ 7 Three months after defendant turned 18, he was convicted of domestic battery. During that year, he also was convicted of aggravated unlawful use of a weapon, theft, and attempted aggravated discharge of a firearm. When defendant was 21, he was convicted of another domestic battery, and then, a little over one year later, defendant murdered Daniels. Regarding that background, the court observed that "defendant's been involved in the system involving criminal activity *** for almost half of his entire life."

¶ 8 The court then commented on the fact that, while in custody, defendant broke a sprinkler head that was part of the jail's fire-sprinkler system. Evidence presented at the sentencing hearing revealed that, after defendant broke the sprinkler head, he was placed in a restraint chair for security purposes. The court also noted that items related to the murder of Daniels were found in the basement of the home of Destynee Joesten, defendant's girlfriend. Evidence presented at the sentencing hearing revealed that, several hours after Daniels was murdered, defendant went to Joesten's house with a partially full box of live ammunition. Defendant hid the box in Joesten's basement; drove off in Davison's vehicle, which still contained Daniels' body; and called Joesten to say a prayer and express his remorse for Daniels' death.

¶ 9 Thereafter, the court asserted:

"[T]he facts surrounding the shooting of the vehicle; although quite frankly, that weapons[-]related offense and the recovery of the AK-47 with live ammunition are going

to be factors which the Court is considering when imposing a sentence on the additional allegation, 25 to life. For purposes of the sentencing on the murder, in and of itself, the Court is considering the fact that the defendant has this prior criminal history."

¶ 10 Evidence presented at the sentencing hearing shed light on what the "shooting of the vehicle" and "recovery of the AK-47 with live ammunition" incidents were. The shooting incident occurred in August 2008, when defendant was 18. Defendant, who was with his gang at the time, shot six times at a car that contained two or three adults and a baby. Based on those facts, defendant pleaded guilty to attempted aggravated discharge of a firearm and was sentenced to four years' imprisonment.[1] The AK-47 incident occurred one week after Daniels was killed. At that time, authorities in Illinois were advised that defendant was apprehended in Memphis after leading the police there on a vehicle chase. Recovered from the car that defendant was driving was a Draco AK-47U and a 40-round magazine that was fully loaded with ammunition. The AK-47 had been reported stolen in Rockford.

¶ 11 In imposing the 55-year sentence for murder, the court mentioned the "horrendous" facts presented at trial, noting that this offense could be described only as "an evil, inexplicable, and cowardly act of shooting *** Daniels." The jury had found that defendant's conduct was exceptionally brutal, making him eligible for 20 years to life. Moreover, the court observed that it needed to fashion a sentence that would protect the public from defendant and that it could do so only by imposing a sentence that would ensure that defendant would never be released from prison. In selecting a 45-year firearm add-on, the court reiterated that the "two weapons[-]related offenses are the reason why the Court believes that a sentence more than the 25, *** as far as the

---

[1] This is the same attempted aggravated discharge of a firearm that the court mentioned as aggravating.

additional allegation, is warranted." At no point during the sentencing hearing did defendant take issue with the 45-year firearm add-on.

¶ 12 Within 30 days after sentencing, defendant moved the court to reconsider his sentence. In his motion, defendant asked the court to "reconsider the sentence of 110 years" and "reduce said sentence pursuant to [section 5-8-1 of the Unified Code of Corrections (Code) (730 ILCS 5/5-8-1 (West 2012))]." In support of the motion, defendant simply claimed that his "sentence is excessive in light of the nature and circumstances of the offense and history and character of the defendant"; that he "had no previous history of adult criminal activity except as noted in the [PSI]"; and that "the Court's sentence failed to take into consideration the rehabilitative potential of the Defendant[] and the statutory factors in mitigation."

¶ 13 At the hearing on the motion, when the court asked defendant if there was "anything else that [he] care[d] to speak to with regard to the motion," defendant replied "[n]o" and asserted that he "would just rely upon the arguments that were previously made" at the sentencing hearing. After the State indicated that it, too, would rely on the arguments it presented at the sentencing hearing, the court denied the motion, stating that it "appropriately considered the facts of the case, all factors in aggravation and mitigation, and [it] gave them their—not only their consideration, but their due weight."

¶ 14                                    II. ANALYSIS

¶ 15 On appeal, defendant argues that the 45-year firearm add-on was improper, because, in imposing that term, the court (1) considered two unrelated weapons offenses, not the facts surrounding Daniels' death, and (2) had already considered those two unrelated weapons offenses in fashioning the 55-year sentence for murder, which amounted to an improper double enhancement. After making these arguments, defendant briefly asserts that the issues are not

forfeited and that, even if they are, this court should consider them under the plain-error rule. Accordingly, we consider first whether the issues are properly before us.

¶ 16    It is well settled that, to preserve a claim of sentencing error, both a contemporaneous objection and a written postsentencing motion raising the issue are required. *People v. Bannister*, 232 Ill. 2d 52, 76 (2008); *People v. Ramirez*, 2015 IL App (1st) 130022, ¶ 19; see also 730 ILCS 5/5-4.5-50(d) (West 2012) ("A defendant's challenge to the correctness of a sentence or to any aspect of the sentencing hearing shall be made by a written motion filed *** within 30 days following the imposition of sentence."). Here, defendant never objected to the 45-year firearm add-on at the sentencing hearing or in his motion to reconsider, a fact that he admitted at oral argument.

¶ 17    Nevertheless, recognizing now that the issues were not properly preserved, defendant asks this court to consider his claims pursuant to the plain-error rule. Plain error is a limited and narrow exception to the general forfeiture rule. *People v. Hampton*, 149 Ill. 2d 71, 100 (1992). To obtain relief under the plain-error rule, a defendant must show that a clear or obvious error occurred. *People v. Hillier*, 237 Ill. 2d 539, 545 (2010). If a clear or obvious error is identified, a defendant may obtain relief if the error complained of meets either prong of the two-pronged plain-error rule. *Id.* That is, "[i]n the sentencing context, a defendant must *** show either that (1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing hearing." *Id.*; see also *Ramirez*, 2015 IL App (1st) 130022, ¶ 21. In advancing a plain-error argument, "[t]he defendant bears the burden of persuasion and the procedural default will be honored if the defendant fails to meet that burden." *Ramirez*, 2015 IL App (1st) 130022, ¶ 22. "[P]lain-error review is forfeited when a defendant fails to present an argument on how either prong of the plain-error doctrine is satisfied." *Id.*

¶ 18    Here, although defendant's two-sentence generic argument in support of why the plain-error rule should be invoked certainly does not aid this court in any way in determining whether the rule applies, and we caution defendant to be more thorough in the future, we will consider whether error arose when the court imposed the 45-year firearm add-on.   See *People v. Miller*, 2014 IL App (2d) 120873, ¶ 17 ("[T]he first step in determining whether the plain-error doctrine applies is to determine whether any reversible error occurred.").

¶ 19    Turning to whether there was error, we must consider whether, in imposing a firearm add-on, a court is limited to considering only the facts surrounding the offense.   In resolving that issue, we begin by reiterating that defendant was convicted of first-degree murder (720 ILCS 5/9-1(a)(1) (West 2012)).   A defendant convicted of first-degree murder ordinarily faces a prison sentence between 20 and 60 years.   730 ILCS 5/5-4.5-20(a)(1) (West 2012).   However, Public Act 91-404 amended the penalty provisions of several statutes, including the provisions for first-degree murder, by adding what have been referred to as the " '15/20/25-to-life' " provisions. *People v. Sharpe*, 216 Ill. 2d 481, 484 (2005) (citing Pub. Act 91-404, § 5 (eff. Jan. 1, 2000)). Under those provisions, a mandatory enhancement is added to a defendant's sentence if the defendant used a firearm in the commission of the offense.   *People v. Moss*, 206 Ill. 2d 503, 506 (2003).   The length of the enhancement depends on how the firearm was used.   *Id.*   For example, a 15-year term shall be added if the defendant was merely armed with a firearm, while a 20-year term shall be added if the defendant personally discharged the firearm.   730 ILCS 5/5-8-1(a)(1)(d)(i), (ii) (West 2012).

¶ 20    Here, Public Act 91-404 increased the sentence defendant faced by amending section 5-8-1(a)(1)(d)(iii) of the Code, which provides:

"(a) Except as otherwise provided in the statute defining the offense or in Article 4.5 of Chapter V, a sentence of imprisonment for a felony shall be a determinate sentence set by the court under this Section, according to the following limitations:

(1) for first degree murder,

* * *

[(d)](iii) if, during the commission of the offense, the person personally discharged a firearm that proximately caused great bodily harm, permanent disability, permanent disfigurement, or death to another person, 25 years or up to a term of natural life shall be added to the term of imprisonment imposed by the court." 730 ILCS 5/5-8-1(a)(1)(d)(iii) (West 2012).

Accordingly, because defendant discharged a firearm that caused Daniels' death, he faced, in addition to a sentence for first-degree murder, a mandatory term between 25 years and natural life in prison.

¶ 21 Defendant takes no issue with the fact that he was subject to section 5-8-1(a)(1)(d)(iii) of the Code. Rather, he challenges what evidence a court may consider in selecting a term within the range of 25 years to natural life in prison. Specifically, defendant claims that, in imposing a firearm add-on, the court may consider only the facts of the murder. Because the issue defendant raises presents a pure question of law, our review is *de novo*. See *McElwain v. Office of the Illinois Secretary of State*, 2015 IL 117170, ¶ 11.

¶ 22 In addressing the issue, we first construe section 5-8-1(a)(1)(d)(iii) of the Code. In construing this provision of the Code, we must keep in mind the well-settled rules of statutory construction. The primary objective in construing a statute is to ascertain and give effect to the

legislature's intent. *People v. Martino*, 2012 IL App (2d) 101244, ¶ 25. The surest and most reliable indicator of this intent is the language of the statute itself. *Id.* When the language is clear and unambiguous, we must apply the statute without resorting to any extrinsic aids of construction. *Id.* Moreover, we must construe the statute to avoid rendering any part of it meaningless or superfluous, and we cannot view words and phrases in isolation. *Id.* ¶ 26. Rather, we must consider the words and phrases in light of other relevant provisions. *Id.* We also may consider the consequences that would result from construing the statute one way or the other, and, in doing so, we must presume that the legislature did not intend absurd, inconvenient, or unjust results. *Id.*

¶ 23    The plain language of section 5-8-1(a)(1)(d)(iii) of the Code provides that, when a defendant commits first-degree murder, the court shall impose, in addition to a sentence for the murder conviction, a term between 25 years and life in prison if, during the commission of the murder, the defendant discharged a firearm that proximately harmed or killed the victim. Nowhere in the statute does it indicate that in imposing the firearm add-on the court may consider only the facts surrounding the murder, and we will not read into it such a requirement. *Id.*

¶ 24    Moreover, it would be absurd to conclude that, in imposing a sentence for first-degree murder, the trial court may consider any and all of the aggravating and mitigating sentencing factors (see 730 ILCS 5/5-5-3.1, 5-5-3.2 (West 2012)), but that, in imposing the firearm add-on, the court may consider only the facts surrounding the offense. The purpose of the firearm-add-on provisions, which we may consider even though the statute is unambiguous (see *Hathaway v. Standard Mutual Insurance Co.*, 285 Ill. App. 3d 67, 71 (1996)), is "to promote public health and safety, and to impose severe penalties that will deter the use of firearms in the commission of felonies." *People v. Butler*, 2013 IL App (1st) 120923, ¶ 36; see also *Sharpe*, 216 Ill. 2d at

531-32. In our view, that objective is not satisfied if a court is limited to considering only the facts surrounding the offense. Although such facts will certainly guide the court in selecting an appropriate term within the range, consideration of other facts, such as the defendant's use of firearms in the past, also serves to meet the statute's objective. Indeed, it would be illogical to conclude that a defendant who has never used a firearm in the past should face the same firearm add-on as a defendant convicted of the same crime who has a history of committing crimes with firearms. In our view, giving the second defendant a longer firearm add-on better serves the purpose of, among other things, protecting the public.

¶ 25    In saying that in imposing a firearm add-on a court may consider a fact like a defendant's prior use of weapons, we of course are in no way suggesting that such a fact is the only one that the court may consider. Rather, the unique circumstances of each case and all of the applicable sentencing factors, both in mitigation and aggravation, should guide the court in determining what sentence to impose. Moreover, although we recognize, as have other courts, that confusion could be avoided if courts were given explicit guidance in selecting a term within the firearm-add-on range (see, *e.g.*, *Butler*, 2013 IL App (1st) 120923, ¶ 42), we cannot say that, in the absence of such guidance, we should limit the facts a court may consider. Any change in section 5-8-1(a)(1)(d)(iii) of the Code should come from the legislature, not the courts.

¶ 26    Citing *Sharpe*, *Butler*, and *People v. Thompson*, 2013 IL App (1st) 113105, defendant argues that, "while the statute does not outright state that the judge should base the length of the firearm enhancement on the case on which the defendant is being sentenced, the case law shows that the basis of the sentence enhancement should be the 'circumstances of each case' and [that] the law is intended to punish the conduct that occurs during the case for which the defendant is being sentenced." We believe that defendant has misconstrued what these cases say.

¶ 27    None of the cases on which defendant relies addressed the issue raised here. Rather, in each of those cases, the court was asked to decide whether the firearm-add-on provisions were constitutional. In doing so, while it is true that the courts used terms such as "during the commission of a serious felony" (*Sharpe*, 216 Ill. 2d at 531), "unique circumstances of each case" (*Butler*, 2013 IL App (1st) 120923, ¶ 41), and " 'types of injuries' " (*Thompson*, 2013 IL App (1st) 113105, ¶ 120 (quoting *Butler*, 2013 IL App (1st) 120923, ¶ 41), the courts did not use such phrases to say that, when a court imposes a firearm add-on, it is limited to considering the facts surrounding the *charged crime*. Rather, the cases used these terms in discussing why the firearm-add-on provisions were enacted, *i.e.*, to address the *general* danger inherent when defendants use firearms during the commission of crimes, and in no way did these courts seek to limit what courts may consider in imposing firearm add-ons. *Sharpe*, 216 Ill. 2d at 531; *Butler*, 2013 IL App (1st) 120923, ¶ 41; *Thompson*, 2013 IL App (1st) 113105, ¶ 120.

¶ 28    Having concluded that a court may consider any relevant sentencing factors in imposing a firearm add-on, we now consider defendant's claim that it was improper for the court to consider defendant's prior bad acts in assessing both the 55-year sentence for first-degree murder and the 45-year firearm add-on.[2] Defendant claims that doing so amounted to an improper "double enhancement."

¶ 29    "Double enhancement occurs when a factor already used to enhance an offense or penalty is reused to subject a defendant to a further enhanced offense or penalty." *People v. Thomas*, 171 Ill. 2d 207, 223 (1996). The prohibition against double enhancements is a rule of statutory

---

[2] Our review of the record reveals that the only prior bad act that the court might have considered twice was the incident in which defendant shot at the car that contained two or three adults and an infant. This technicality does not affect our analysis.

construction. *People v. Rissley*, 165 Ill. 2d 364, 390 (1995). We review *de novo* whether there has been a double enhancement. *People v. Phelps*, 211 Ill. 2d 1, 12 (2004).

¶ 30    Here, no double enhancement occurred. As defendant's prior offenses were not elements of first-degree murder, they did not expose him to the initial sentencing range of 20 to 60 years' imprisonment. Further, they did not expose him to the firearm add-on of 25 years to life, which instead was the product of his having killed Daniels. Thus, the trial court considered the prior offenses only in exercising its discretion to select appropriate terms within those ranges. To the extent that the court used the prior offenses a second time in selecting the firearm add-on, "this 'second use' of defendant's prior [offenses] does not constitute an enhancement, because the discretionary act of a sentencing court in fashioning a particular sentence tailored to the needs of society and the defendant, within the available parameters, is a requisite part of every individualized sentencing determination. [Citation.] The judicial exercise of this discretion, in fashioning an appropriate sentence within the framework provided by the legislature, is not properly understood as an 'enhancement.' " *Thomas*, 171 Ill. 2d at 224-25. Consideration of defendant's prior offenses thus did not "enhance" his sentence.

¶ 31                                III. CONCLUSION

¶ 32    For these reasons, the judgment of the circuit court of Winnebago County is affirmed. As part of our judgment, we grant the State's request that defendant be assessed $50 as costs for this appeal. 55 ILCS 5/4-2002(a) (West 2014); see also *People v. Nicholls*, 71 Ill. 2d 166, 179 (1978).

¶ 33    Affirmed.