2021 IL App (2d) 200504-U
No. 2-20-0504
Order filed December 22, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Boone County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Nos. 18-TR-5652 |
| | ) ) | 19-CF-10 |
| RYAN W. LUTTRELL, | ) ) | Honorable C. Robert Tobin III, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court.
Justices Birkett and Brennan concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court's comments at sentencing that defendant was "whining" and "playing the victim" were an accurate characterization of defendant's self-centeredness and lack of remorse, even if the court's language was rather ill-advised. Also, the court gave appropriate weight to mitigating factors, including defendant's poor health.

¶ 2    Defendant, Ryan W. Luttrell, appeals his seven-year sentence for aggravated driving under the influence of cocaine causing great bodily harm (DUI) (625 ILCS 5/11-501(d)(1)(C) (West 2018)). He contends that the trial court injected personal opinion into its sentencing determination and failed to consider mitigating factors adequately. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4      Defendant was indicted on multiple counts of DUI and charged with a traffic violation for improper lane usage. At a bond reduction hearing, defendant told the trial court that he (1) had had two hip surgeries stemming from the traffic accident that gave rise to his charges; (2) had a broken arm and suffered from asthma; (3) had physical therapy appointments three times per week; (4) was currently prescribed multiple pain medications, including a narcotic, which he was not receiving while in custody, resulting in discomfort and; (5) was unemployed and lived with his mother. The court did not reduce defendant's bond, but defendant posted bond in February 2019.

¶ 5      Defendant's trial was set for March 11, 2020. On that date, defendant did not appear. Defense counsel informed the court that defendant had been prescribed additional medication. According to counsel, defendant felt "like he's not in a condition to proceed to [a] bench trial today." The court stated that it would nonetheless proceed with trial. After a brief delay while the court handled a matter for another case, defense counsel told the court that defendant was "still indicating that he was sick." Counsel explained that defendant had been up for 48 hours, had seen a doctor, and was "not ready to proceed." Defendant's mother had told counsel that defendant suffered a mental breakdown during the past week; she was trying to find him a treatment facility. The court believed that "a lot of [defendant's] actions are a bit delaying tactics," but the court also wanted to make sure that defendant was fit to stand trial. The court noted that, if the parties believed there was a fitness issue, they could "raise it as a *bona fide* doubt." Counsel clarified that he was not claiming a *bona fide* doubt of defendant's fitness to stand trial. The court rescheduled the trial to April 2, 2020, but revoked defendant's bail. Because of COVID-19, the court continued the trial to May 29, 2020.

¶ 6 On May 29, 2020, defense counsel remarked that defendant's mother had texted him stating that defendant "was in extreme pain and was not going to be coming over this afternoon." Counsel noted that defendant had nonetheless come to court and told counsel that he was "in pretty bad pain" from gallstones. Defendant also said he was at the hospital on May 27 and was told "that he should schedule a surgery ASAP." The State argued that defendant was once again using a delay tactic. The court believed this was likely, but it could not be certain without hearing from a nurse. Thus, the court continued the trial to June 19, 2020.

¶ 7 On June 19, 2020, a bench trial was held. The parties stipulated the following facts. On June 20, 2018, at approximately 1:09 p.m., Gregory Adrian was traveling eastbound on Business Route 20. Route 20 is a two-lane roadway with eastbound and westbound lanes of travel divided by a dashed yellow line. Each lane has an outside white fog line and, beyond that, a gravel shoulder. Adrian saw a silver Honda in front of him, driven by defendant. He observed the Honda "drive off the road" and return. Adrian called 911 and remained on the line with the dispatcher as he followed the Honda. The Honda repeatedly left its lane of travel. Finally, the Honda crossed into the westbound travel lane and collided head-on with a Dodge van occupied by Allen and Peggy Gottinger. Adrian requested an ambulance.

¶ 8 A second eyewitness, Brenda Quast, was also traveling behind defendant. Quast saw defendant leave his lane of travel multiple times before crossing the center line and hitting the Dodge van head-on. Quast helped render aid to the Gottingers until an ambulance transported them to a Rockford hospital.

¶ 9 Allen was diagnosed with an open fracture of both bones in his right hand at the hospital, requiring surgery. Peggy was diagnosed with a left-side hip fracture and dislocation and a right ankle comminuted fracture.

¶ 10    Boone County sheriff's deputy Daniel Reilley was dispatched to the crash scene. Reilley spoke with defendant in an ambulance. Defendant told Reilley that he had snorted two to three OxyContin pain pills earlier that morning. He admitted that he did not have a prescription for the pills. Hospital personnel took a sample of defendant's urine, which tested positive for cocaine metabolite and opiates.

¶ 11    After the stipulation was read into the record, defendant testified that, on June 30, 2018, he was driving from Rockford to Belvidere when he suffered an allergic reaction to grass. His throat closed, and he could not breathe. He attempted to get his inhaler but dropped it on the floorboard. When he slowed down to about 35 miles an hour and tried reaching under his leg to get the inhaler, his car "slid over the line." Defendant testified that he told Reilley that he was sober and took naproxen that morning. Defendant denied telling Reilley that he had taken OxyContin that morning.

¶ 12    The court found defendant guilty, commenting that his trial testimony was not credible "at all."

¶ 13    The court ordered the preparation of a presentence investigation report (PSI). The PSI showed that defendant had criminal convictions of theft in 1995, possession of cannabis in 1998, driving with a suspended license in 2009, and stalking in 2012. Regarding defendant's attitudes and values, the PSI stated:

> "The defendant stated he takes no pride in criminal behavior and does have concern for others. He feels that he has lost control over events in his life since the arrest for this offense, because he has no say in the proceedings. He wishes this all would have never happened and that he should not have experimented with a drug."

¶ 14    Defendant, who was age 44 at the time of the PSI, reported no current alcohol or drug use. He used marijuana several times around age 16, but it aggravated his asthma, and he has not used it since. Defendant first tried cocaine at age 41 and has used it only four times. Each time, "it was offered to him and *** he didn't pay for it himself."

¶ 15    In a statement he provided for the PSI, defendant claimed that he was offered cocaine three days before the collision. He "didn't pay for or search for it." As for the amount he consumed, he "put the corner of a credit card in twice." Defendant claimed that the collision was caused by "an allergy attack, [his] first time ever while driving." He crossed into oncoming traffic as he tried to retrieve his inhaler from the floorboard. The collision propelled his head through the windshield. He broke his arm and hip (which crushed his sciatic nerve). "Blood was pooring [*sic*] out from [his] head and [he] could see chunk [*sic*] of [his] hair in the windshield." He was "in severe pain and lost a lot of blood." The responding officer asked if he had been drinking or using drugs. He replied that he was sober. The officer continued to ask him what he had taken. The officer became aggressive and eventually "started screaming at [him] to say what [he] took." Defendant replied that he had taken naproxen. The officer responded, " '[D]id you say oxy with an O?' " Defendant "just said yes, [and he] started saying yes to everything [the officer] asked." He "knew that wasn't in his system so [he] just wanted to shut him up and go to the hospital." Defendant continued:

> "I was worried about the two bumps of coke I did that week but it was 70 hours before the accident. And that tiny bit I did has ruined my life. It was the biggest mistake I've ever made, cost me my job, my freedom, and $14,000. I never heard of the zero tolerance law, but now everyone's gonna know. I'm sorry for my poor hand writing [*sic*], its [*sic*] because my hands shake now, not sure if it's one of my meds or just my nerves. I couldn't convey

all this in court, the second I got there in court I started to panic and just wanted to get out of there as fast as I could."

¶ 16    Regarding defendant's risk to reoffend, the PSI listed "[s]upportive family," "[s]table housing," and "[a]bility to gain employment" as protective factors, and "[m]edical concerns" and "[p]ossibility of mental health concerns (not diagnosed)" as risk factors.

¶ 17    At sentencing, defendant was transported to the court but chose not to appear. The court stated that defendant would not be penalized for his absence. The Gottingers gave victim impact statements detailing their injuries and suffering after the collision. Peggy stated that she had required a complete hip replacement and has since been unable—without assistance—to use the toilet, take a shower, or stand and walk.

¶ 18    The State argued that defendant showed no remorse, instead he focused on the impact of the offense on himself, not the victims. The State sought a 12-year term of incarceration. Defense counsel challenged the State's comment that defendant did not accept responsibility for the offense. Counsel argued that defendant "lack[ed] the understanding of the law" and that this was the only reason he went to trial. Counsel also pointed to the statements in the PSI that defendant did not take pride in criminal behavior, that he had concern for others, and that he wished the offense had not happened. Counsel further argued that defendant's medical conditions were a mitigating factor and asked for a sentence of three to four years' incarceration.

¶ 19    The court sentenced defendant to seven years' incarceration. The court discussed the pertinent statutory factors in aggravation and mitigation. As pertinent aggravating factors, the court identified the seriousness of the offense, the need to deter others, and defendant's criminal history. Reviewing the statutory mitigating factors, the court commented that it "really [did]n't see any of these applying." The "closest" to a mitigating factor was defendant's medical conditions, but the

court found nothing to suggest that defendant could not obtain suitable medical treatment while incarcerated. The court then addressed defendant's character:

"[Defendant] has played the victim throughout.

When he was first incarcerated, he was whining that he got hurt too and that that should be—I took that as that should be as or more important than either of the two Gottingers, their injuries. He repeatedly every time we tried to set the matter for trial would be an obstructionist claiming he didn't feel good. And again, today I'm not going to penalize him for not showing up here. He's got a right not to do that, but it's just sort of in line with who I think [defendant] is.

Throughout the PSI it can be painted that he truly believes he's the victim throughout this whole thing. *** I know that [defense counsel] was doing his best to advocate for him that he wishes this would never have happened. I don't think he wishes it wouldn't have happened as to the injuries to Allan and Penny Gottinger. I think he just doesn't want to face the consequences.

He stated he takes no pride in criminal behavior, but didn't say that he was the one that had the criminal behavior. Feels he's lost control over events in his life since the arrest because he has no say in the proceedings. Again, he's the victim. He wishes all of this— he wishes this all would have never happened and that he should not have experimented with the drug. Again, he's the victim.

Throughout the times that he was here, he's the victim up to the point—he's just not—he doesn't want to face the consequences of his actions. Even to the point of the illogical and nonsensical defense that he raises—he raised at trial that somehow he was just reaching for his inhaler and the inhaler was more important than crossing all the way

over the highway and crashing into a vehicle head on. That was all nonsensical and not believable."

¶ 20    Defendant moved to reconsider his sentence. He asserted that his sentence was excessive "[i]n light of the evidence presented to the court, the factors in mitigation, and the factors in aggravation." He specifically argued that the trial court gave too little weight to mitigating factors. Namely, that (1) the offense was the result of circumstances unlikely to recur, (2) his character and attitudes were such that he was unlikely to reoffend, (3) he expressed regret for the offense, and (4) his criminal history was minimal. Defendant also asserted, without elaboration, that his sentence was not in keeping with his potential for rehabilitation.

¶ 21    The trial court denied the motion, stating that it had considered all the factors in aggravation and mitigation. Defendant appeals.

¶ 22                                    II. ANALYSIS

¶ 23    Defendant contends that his sentence is excessive because the trial court wrongly relied on personal opinions of his character in stating that he was "whining" and "played the victim" during the proceedings. He also argues that the court did not adequately consider mitigating factors.

¶ 24    The State initially argues that, because he did not raise it below, defendant has forfeited his claim that the trial court injected personal opinion into its sentencing decision. "It is well settled that, to preserve a claim of sentencing error, both a contemporaneous objection and a written postsentencing motion raising the issue are required." *People v. Walsh*, 2016 IL App (2d) 140357, ¶ 16; see also 730 ILCS 5/5-4.5-50(d) (West 2018) ("A defendant's challenge to the correctness of a sentence or to any aspect of the sentencing hearing shall be made by a written motion filed *** within 30 days following the imposition of sentence."). Sentencing issues not raised in the

trial court are subject to forfeiture on appeal. See *In re Angelique E.*, 389 Ill. App. 3d 430, 432 (2009).

¶ 25     The State is correct that defendant did not contemporaneously object to the trial court's description of defendant's character. Nor did defendant's motion to reconsider the sentence challenge the trial court's comments. Defendant asks, however, that we reach the merits of the issue under the plain-error rule. "Plain error is a limited and narrow exception to the general forfeiture rule." *Walsh*, 2016 IL App (2d) 140357, ¶ 17. "To obtain relief under the plain-error rule, a defendant must show that a clear or obvious error occurred." *Id.* "If a clear or obvious error is identified, a defendant may obtain relief if the error complained of meets either prong of the two-pronged plain-error rule." *Id.* "That is, '[i]n the sentencing context, a defendant must *** show either that (1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing hearing.' " *Id.* (quoting *People v. Hillier*, 237 Ill. 2d 539, 545 (2010)). Here, there was no clear or obvious error; thus, by necessity, there was no plain error. See *In re Johnathan T.*, 2021 IL App (5th) 200247, ¶ 75 ("Absent a clear or obvious error, there can be no plain error.").

¶ 26     A trial court has broad discretion in determining the appropriate sentence for a particular defendant, and its determination will not be disturbed absent an abuse of that discretion. *People v. Patterson*, 217 Ill. 2d 407, 448 (2005). A reviewing court will not deem excessive a sentence within the applicable statutory range unless it varies greatly from the spirit of the law or is manifestly disproportionate to the nature of the offense. *People v. Brazziel*, 406 Ill. App. 3d 412, 433-34 (2010). When balancing the retributive and rehabilitative aspects of a sentence, a court must consider all factors in aggravation and mitigation—including, but not limited to, a defendant's age, habits, credibility, criminal history, character, education, and environment, as

well as the nature and circumstances of the crime and the defendant's actions in the commission of that crime. *People v. Raymond*, 404 Ill. App. 3d 1028, 1069 (2010). We presume that the trial court properly considered all mitigating factors before it, and the defendant has the burden to show the opposite affirmatively. *Brazziel*, 406 Ill. App. 3d at 434. A reviewing court must not substitute its judgment for the trial court merely because it would have weighed the factors differently. *People v. Stacey*, 193 Ill. 2d 203, 209 (2000).

¶ 27    In weighing aggravating and mitigating factors, "a trial court is not required to give a defendant's rehabilitative potential more weight in its sentencing decision than it gives the seriousness of the offense. [Citation.] In fact, the seriousness of the offense has been called the most important factor to consider in imposing sentence." *People v. Spencer*, 229 Ill. App. 3d 1098, 1102 (1992). "It is well established that a defendant's penitent attitude or his lack of remorse may be considered by a court in imposing sentence." *People v. Coleman*, 135 Ill. App. 3d 186, 188 (1985). "It is also permissible to infer a defendant's lack of sorrow or remorse from statements made to the trial court or contained in pre-sentence reports." *Id.*

¶ 28    However, "[w]hile sentencing judges are vested with wide discretion so that reasoned judgments as to the penalty appropriate to the particular circumstances of each case can be accomplished, that discretion is not unfettered." *People v. Dempsey*, 242 Ill. App. 3d 568, 597 (1993). Consideration of an improper factor in aggravation affects the defendant's fundamental right to liberty. *Id.* at 597-98. "Where the sentencing judge relies on improper factors, including prejudice, speculation, and conjecture, to the exclusion of the requisite statutory factors, the sentence should be vacated, and the cause remanded for resentencing." *Id.* at 597. For example, in *Dempsey*, the appellate court vacated the defendant's sentence and remanded for resentencing on the defendant's conviction of criminal transmission of HIV. The victim was the defendant's

brother. The appellate court reasoned that, in fashioning the sentence, the trial court appeared to rely on unfounded fear and prejudice relating to HIV infection and on speculation that the defendant was not careful to avoid infecting his girlfriend with HIV. *Id.* at 598. See also *People v. Rosa*, 206 Ill. App. 3d 1074, 1084 (1990) (in imposing sentence, the court referred to " 'the stupidity and sluttiness of women,' " stated that people like the defendant were " 'slovenly' " and " 'stupid,' " and referred to the " 'coward[ice]' " of street gang members).

¶ 29    "[R]eliance on an improper factor does not always necessitate remandment for resentencing." *People v. Childress*, 321 Ill. App. 3d 13, 28 (2001). "Remandment is not required when it can be determined from the record that the weight placed on the improperly considered factor was so insignificant that it did not lead to a greater sentence." *Id.* "When determining whether a sentence was improperly imposed, the reviewing court should not focus on the trial court's isolated statements. Rather, this court should consider the entire record as a whole." *Id.* at 28-29.

¶ 30    Here, defendant contends that the court's comments describing him as "whining" and "playing the victim" were based on speculation or personal belief. But the record shows support for the court's statements. Defendant sought to continue the trial on multiple occasions. The State opined, and the court rightly was inclined to agree, that defendant was using his medical conditions as a pretext for the continuances. Notably, defendant never took responsibility for his crime or showed remorse for its impact on the victims. Defendant points to the PSI, which stated in general terms that he took no pride in criminal behavior and had concern for others. But defendant never expressed specific concern for the Gottingers and never took responsibility for the specific crime he committed. Instead, in his statement provided for the PSI, he focused on himself, stating that his life was ruined. He appeared to blame the accident on an asthma attack, but he also implied

that his cocaine use from days earlier might have contributed. As the State notes, defendant attempted to minimize the cocaine ingestion (and its devastating consequences) by pointing out that he did not pay for the drug. Defendant chose not to attend sentencing, where he could have given a statement in allocution.

¶ 31 The foregoing points were all reflective of defendant's general moral character and potential for rehabilitation, which are important considerations in sentencing. See *People v. Stacey*, 193 Ill. 2d at 209. To the extent that the court's word choices—"whining" and "playing the victim"—might have been ill-advised, this does not justify reversal. "A trial judge's inclusion of some personal observations does not necessarily rise to an abuse of discretion." *People v. Thurmond*, 317 Ill. App. 3d 1133, 1142 (2000). Moreover, even if the trial court somehow erred in its criticisms of defendant's character, the sentence was amply justified by proper considerations including, most notably, the grave nature of the offense.

¶ 32 Defendant next argues that the trial court failed to properly consider in mitigation his minimal criminal history and poor health. We disagree. Defendant's criminal history, albeit not recent, was a statutory factor in aggravation. 730 ILCS 5/5-5-3.2(a)(3) (West 2018). One statutory factor in mitigation is that the defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period before the commission of the present crime. 730 ILCS 5/5-3.1(a)(7) (West 2018). We presume that the trial court gave this factor its due weight even though determining that defendant's criminal history was more in aggravation than mitigation. As for defendant's poor health, the court expressly considered it but did not weigh it heavily because defendant could obtain medical services while incarcerated. The foregoing determinations were reasonable, and we will not reweigh the factors in aggravation and mitigation.

¶ 33    We further note that there is no dispute that defendant faced up to 12 years of incarceration. See 625 ILCS 5/11-501(d)(2)(F) (West 2018). Thus, defendant's sentence was well within the statutory range. Indeed, though the State sought the maximum sentence, the sentence imposed was just above the midpoint of the range—showing that the court considered mitigating factors.

¶ 34                                III. CONCLUSION

¶ 35    For the reasons stated, we affirm the judgment of the circuit court of Boone County.

¶ 36    Affirmed.