NOTICE
Decision filed 08/28/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 230365-U

NO. 5-23-0365

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Champaign County. |
| | ) | |
| v. | ) | No. 21-CF-210 |
| | ) | |
| JOHN M. BENNETT, | ) | Honorable |
| | ) | Randall B. Rosenbaum, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE McHANEY delivered the judgment of the court.
Justices Boie and Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*: Where the trial court imposed a sentence within the statutory limits after appropriately considering factors in aggravation and mitigation, the trial court's sentencing decision is affirmed; postplea counsel did not provide ineffective assistance by not pursuing a meritless request to reconsider the defendant's sentence.

¶ 2    After entering an open guilty plea, the defendant was sentenced to a 38-year prison term in the Illinois Department of Corrections (IDOC). The defendant argues on appeal that his sentence was excessive, because the trial court failed to adequately consider his rehabilitative potential and considered improper aggravating factors in fashioning what the defendant claims is, in effect, a life sentence. For the reasons that follow, we affirm.

1

¶ 3                                I. BACKGROUND

¶ 4     On November 7, 2022, the defendant entered an open plea of guilty to the charge of aggravated discharge of a firearm (720 ILCS 5/24-1.2(a)(4) (West 2020)), in exchange for the State's agreement to dismiss the remaining two counts and an unrelated pending case. The trial court admonished the defendant that the possible sentencing range "would be anywhere between 10 and 45 years." The defendant said he understood the possible sentence and answered "Yes" when asked if his plea was voluntary and done of his own free will. The trial court then stated: "The *** only promise the State is making is that they are agreeing to dismiss counts two and three here, and they're agreeing to dismiss 20-CF-194. Otherwise, the sentence is up to me, and it's within the range I described to you. Is that what you believe the agreement is?" The defendant said, "Yes."

¶ 5     The factual basis provided by the State at the defendant's open plea hearing and testimony from the sentencing hearing held December 20, 2022, disclosed the following: On February 21, 2021, the defendant was a passenger in a vehicle being driven by his then-paramour. The vehicle was stopped for a traffic violation. The defendant refused to provide his identification upon request. The officer who initiated the traffic stop called for additional officers to assist while she conducted a K-9 sniff of the vehicle. The K-9 alerted to the presence of drugs at the passenger door, where the defendant was seated. As the officer was returning the K-9 to the vehicle, the defendant forced his then-paramour to flee the scene.

¶ 6     A high-speed chase ensued, which spanned multiple counties, with officers at times exceeding speeds of 100 miles per hour. Officers deployed multiple "stop sticks" to disable the fleeing vehicle. During the chase, two police vehicles crashed.

¶ 7     During the chase, three separate times, the defendant leaned out of the passenger window and fired multiple shots at pursuing officers. The defendant spoke to police on the phone during the chase and said he would kill everyone and that he had "stuff" on him and did not want to get in trouble over it. The defendant claimed that he shot in the air, not at the pursuing officers. One of the officers described that she "saw the defendant lean out of the window, point *** in [her] direction [and] saw the muzzle flash from the *** rifle." She knew the defendant's gun was aimed at her and not the sky because she "could see the full circle of the *** muzzle flash."

¶ 8     The chase ended when the "stop sticks" caused three flat tires to the fleeing vehicle. After threats to kill himself and others, the defendant finally dropped his rifle out the passenger window, along with a methamphetamine smoking device and an AR-15 magazine, later determined to be missing 21 rounds. The chase and standoff lasted for three and a half hours, at the end of which the defendant's then-paramour fled the vehicle, screaming and crying.

¶ 9     Another officer testified that on Christmas day in 2019, the defendant "fled from [a] traffic stop and *** initiated a high-speed pursuit, in excess of 100 MPH." Despite the effectiveness of tire deflation devices, the defendant continued to drive "his vehicle on the rims into the state of Indiana." After losing control of the car into some mud, the defendant exited while armed with a knife and told officers "if anyone came close, he would kill them, and then himself." This incident occurred after the defendant "battered his girlfriend." That officer also testified about another "incident when a girlfriend alleged that [the defendant] choked her, and when deputies arrived she informed [them] that he had manually strangled her with his bare hands, and deputies could observe some redness on her neck and her chest area." The officer identified the defendant as one of the few people deputies were ordered to go with a partner to interact with "because of his unpredictability and [in]stability." The defendant fled from police on another occasion after

3

"accidentally shooting himself." The officer concluded that the defendant "will mentally or physically abuse anyone if it helps him obtain his desires. He is the definition of a danger to society and must be removed from it."

¶ 10    At the sentencing hearing, the defendant made the following statement in allocution:

"I would first like to apologize to all the officers that were involved. *** I'm not blaming drug use on what happened, but it does play a part in my psychological placement at the time. So with that I am sorry. I take full responsibility for this. And I hope that you guys and your families can forgive me in some way. And the same goes to my family. I apologize for putting you guys through this, and I hope that one day I can come back and be a part of the community again."

¶ 11    After reciting aggravating factors, the State asked for a sentence of 38 years. In mitigation, defense counsel admitted two psychological evaluations, which outlined the defendant's family, school, and psychological and criminal history. One of the evaluations diagnosed the defendant with antisocial personality disorder and documented his history of substance abuse. The defendant's 15-year-old daughter testified that he was a wonderful father and asked for leniency so that "one day I can see him better than he is now." She also stated she knew "he could be an amazing grandfather one day." Defense counsel asked for a sentence between 10 and 15 years.

¶ 12    The court stated that it "has considered the presentence investigation, the evidence presented, the arguments of counsel, and the statement by the defendant. [It was] considering all the statutory and non-statutory factors in aggravation and mitigation, whether I've stated them or not." The court stated further:

"There is mitigation here, the State accepts that. He pled guilty. [The defendant] has apologized, he has shown remorse, and that is something that I am required

4

under the law to consider. He also has three children. He is in contact with the older two on a regular basis. I'm not sure what else he does; it's not clear, however, that mitigation is reduced to some degree because he hasn't helped out financially. It appears he owes quite a bit in child support. I recognize that he has some physical problems as well, such as back issues."

¶ 13    The court also discussed factors in aggravation:

"There is aggravation here as well, significant aggravation. The first, of course, is the deterrent message, to send a message to [the defendant] that he cannot continue to commit crimes like this. And frankly, as I've heard here today, this isn't the first time he fled from officers, where they've had to put the strips down to stop him. This is not the first time he's had an AR-15. There have been incidents in the past where officers have been warned that he is paranoid and he carries a rifle. ***

*** [W]e also have to send a message to people in the community that they cannot act this way. This was a simple traffic stop, [the deputy], frankly, was just doing her job. The driver was going to get a ticket, and that was going to be it. And [the defendant] escalated it by, in some way, shape, or form, intimidating or threatening [his then-girlfriend] to drive on, causing a high-speed chase over many miles, over a long period of time, threatening harm to people, and actually causing harm to people. He escalated even further by shooting his rifle at least three times towards the deputy's car, or at least in the direction.

***

I also have considered as aggravation his prior record. It goes back to 1997 with a juvenile adjudication. It's not a horrible record by any stretch of the

5

imagination, but some of them have been related to drug use or violence; a battery, a resisting arrest. There have been petitions to revoke, of his probation and the like. There have been orders of protection and stalking claims against him as well, which is consistent with what I've heard here by the witnesses."

¶ 14   The court clarified it was not allowed to consider in aggravation that the defendant discharged a firearm in the direction of police, and then stated, "I am going to consider what the [deputies] said, other than what the law does not allow me to consider. It clearly had an impact on both of the [deputies], and I consider that in aggravation." The defendant was sentenced to 38 years in IDOC.

¶ 15   On January 5, 2023, the defendant filed a *pro se* motion to withdraw his guilty plea and vacate the judgment, or reconsider sentencing. The trial court then appointed the public defender to represent the defendant. On February 13, 2023, defense counsel filed an amended motion which mirrored the defendant's *pro se* motion, except the amended motion did not include a request for the trial court to reconsider the defendant's sentence and did not raise any challenge to the sentence imposed. The amended motion to withdraw the guilty plea was denied after a hearing held on May 7, 2023. The defendant filed a timely appeal.

¶ 16                                    II. ANALYSIS

¶ 17   The defendant argues on appeal that his sentence was excessive and that the trial court considered improper aggravating factors before imposing what the defendant now claims was a *de facto* life sentence. Trial counsel failed to include those claims in his amended motion to withdraw the defendant's guilty plea. "It is well settled that, to preserve a claim of sentencing error, both a contemporaneous objection and a written postsentencing motion raising the issue are required." *People v. Walsh*, 2016 IL App (2d) 140357, ¶ 16; see also 730 ILCS 5/5-4.5-50(d) (West

6

2022) ("A defendant's challenge to the correctness of a sentence or to any aspect of the sentencing hearing shall be made by a written motion filed *** within 30 days following the imposition of sentence."). If a defendant fails to challenge his sentence in the trial court, issues related to the defendant's sentence are subject to forfeiture on appeal. See *In re Angelique E.*, 389 Ill. App. 3d 430, 432 (2009) (a defendant's failure to raise a sentencing issue in the trial court generally results in forfeiture of that issue on appeal). The defendant's sentencing challenge has therefore been forfeited.

¶ 18    The defendant seeks to avoid forfeiture first by arguing that this court can reach his sentencing claims under plain error review. This court may reach unpreserved sentencing error by way of plain error review. "Plain error is a limited and narrow exception to the general forfeiture rule." *Walsh*, 2016 IL App (2d) 140357, ¶ 17. "To obtain relief under the plain-error rule, a defendant must show that a clear or obvious error occurred." *Id.* "If a clear or obvious error is identified, a defendant may obtain relief if the error complained of meets either prong of the two-pronged plain-error rule." *Id.* "That is, '[i]n the sentencing context, a defendant must *** show either that (1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing hearing.' " *Id.* (quoting *People v. Hillier*, 237 Ill. 2d 539, 545 (2010)).

¶ 19    The defendant argues that the trial court committed second-prong plain error, because (1) the sentence was excessive in light of the offense, (2) it was unnecessary for deterrence, and (3) the trial court failed to properly consider the goals of rehabilitation and restoration. Alternatively, the defendant seeks to avoid forfeiture by arguing that trial counsel was ineffective for not including in the amended motion to withdraw guilty plea the defendant's *pro se* request for the court to reconsider his sentence.

7

¶ 20    Our supreme court "has equated second prong plain error with 'structural error,' which is the type of error that erode[s] the integrity of the judicial process and undermine[s] the fairness of the defendant's trial." (Internal quotation marks omitted.) *People v. Johnson*, 2024 IL 130191, ¶ 55. "[S]tructural errors identified by the Supreme Court include a complete denial of counsel, denial of self-representation at trial, trial before a biased judge, denial of a public trial, racial discrimination in the selection of a grand jury, and a defective reasonable doubt instruction." (Internal quotation marks omitted.) *Id.* ¶ 57. "[S]tructural errors affect the very framework within which the sentencing hearing proceeds, rather than mere errors in the sentencing process itself. *** [A] structural error at sentencing is an error that renders the sentencing hearing itself an unreliable means of implementing that balance." *Id.* ¶ 89. A court considering improper factors does not constitute structural error, and second-prong plain error cannot be invoked for errors subject to a harmless error analysis. *Id.* ¶¶ 90-91. "We have previously found that the admission of improper aggravation evidence during a sentencing proceeding is subject to harmless-error analysis and reversal is not mandated in every instance." (Internal quotation marks omitted.) *Id.* ¶ 91. The defendant bears the burden of establishing plain error, and if that burden is unmet as to either prong of the plain error rule, the claim raised for the first time on appeal is forfeited. *Walsh*, 2016 IL App (2d) 140357, ¶ 17.

¶ 21    "Illinois courts have long recognized that the imposition of a sentence is left to the sound discretion of the trial court and will not be altered upon review absent an abuse of discretion." *People v. Etherton*, 2017 IL App (5th) 140427, ¶ 15. "The abuse of discretion standard has been viewed as the most deferential standard of review available with the exception of no review at all." *Id.* "The trial court's imposition of a sentence is given great deference because the trial court is in the best position to consider the defendant's credibility, demeanor, general moral character,

mentality, social environment, habits, and age." *Id. "*When a sentence imposed falls within the statutorily prescribed range, it will not be found excessive or an abuse of discretion unless the sentence greatly varies from the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense." *Id.* ¶ 28. "The spirit and purpose of the law are promoted when the trial court's sentence reflects both the seriousness of the offense and gives sufficient consideration to the defendant's rehabilitative potential." *Id.* "The defendant bears the burden to affirmatively establish that the sentence was based on improper considerations, and [the court on appeal] will not reverse a sentence imposed by a trial court unless it is clearly evident the sentence was improper." *Id.* ¶ 29.

¶ 22    The defendant contends that the trial court failed to fully consider his "history" when fashioning its sentence and ignored the objectives of rehabilitation and restoration. We disagree. At the conclusion of the sentencing hearing, the trial court specifically referenced the defendant's mental health issues as mitigation, stating: "The other compelling factor in mitigation is the mental health issues. *** The fact is [the defendant] is not faking the mental health issues. He truly has them, and he's been dealing with them for many years. *** On balance I find it more of a mitigating factor than an aggravating factor."

¶ 23    In support of his excessive sentence argument, the defendant cites to the First District Appellate Court's unpublished decision in *People v. Powell*, 2023 IL App (1st) 191321-U. There, the defendant was convicted of, *inter alia*, attempted murder while armed with a firearm. In that case, the defendant put a pistol to the victim's temple and pulled the trigger twice. The gun did not discharge. The appellate court reduced the defendant's 30-year sentence to 21 years, noting that "[n]o one was injured in this offense, and [the defendant's] criminal background was largely non-

9

violent." *Id.* ¶ 56. The defendant here contends that like the court in *Powell*, we "should not overlook the lack of injuries caused by Mr. Bennett."

¶ 24 Here, the defendant fired a rifle at pursuing police officers three separate times during a high speed chase, during which two squad cars crashed. We acknowledge that no officer was struck by the bullets the defendant fired at them. However, we decline the defendant's invitation to find the fact that he was a lousy shot to be mitigating. In *Powell*, the appellate court reduced the defendant's sentence by nine years, despite the fact that the defendant's extensive criminal history included *six* prior IDOC sentences, a lengthy period of county jail time, and one probation sentence that was terminated unsatisfactorily. Not only do we find *Powell* unpersuasive, we find that it was wrongly decided.

¶ 25 The defendant next argues that his 38-year sentence was much longer than necessary for deterrence purposes. We again disagree. First, section 5-5-3.2 of the Unified Code of Corrections (730 ILCS 5/5-5-3.2 (West 2022)) lists deterrence as an aggravating factor which may be considered by a court as reason to impose a more severe sentence than would otherwise be given. Second, the defendant conveniently ignores the fact that this was his *second* high speed chase, which also involved the use of tire deflation devices by law enforcement, and *again* ended with the defendant brandishing a weapon and threatening officers' lives. The trial court appropriately exercised its discretion to impose a sentence that would both deter others and deter the defendant from improving his marksmanship and firing at pursuing officers during a third high speed chase.

¶ 26 The defendant emphasizes that "the influences of substance abuse and mental illness here cannot be ignored." The record clearly establishes that the trial court ignored neither the defendant's history of substance abuse nor his mental health issues. The defendant next emphasizes that lengthy prison sentences do not achieve the goal of restoring a person to useful

10

citizenship. In weighing a defendant's rehabilitative potential, a court is not required to give greater weight to that consideration than to the seriousness of the offense. See *People v. Fort*, 229 Ill. App. 3d 336, 341-42 (1992) (citing *People v. Mack*, 133 Ill. App. 3d 788, 793 (1985)).

¶ 27     "A person commits aggravated discharge of a firearm when he *** knowingly or intentionally *** [d]ischarges a firearm in the direction of a vehicle he *** knows to be occupied by a peace officer[.] *** A violation of [this] subsection *** is a Class X felony for which the sentence shall be a term of imprisonment of no less than 10 years and not more than 45 years." 720 ILCS 5/24-1.2(a)(4), (b) (West 2020). The defendant's sentence was within the statutorily prescribed range and was seven years less than the maximum.

> "In determining the correctness of a sentence, the reviewing court should not focus on a few words or statements made by the trial court, but is to consider the record as a whole. To obtain a remand for resentencing, therefore, defendant must show more than the mere mentioning of an improper fact. An isolated remark made in passing, even though improper, does not necessarily require that defendant be resentenced. Rather, defendant must show that the trial court relied on the improper fact when imposing sentence." *People v. Reed*, 376 Ill. App. 3d 121, 128 (2007).

¶ 28     An error is deemed structural only if it renders the sentencing hearing fundamentally unfair. *People v. Moon*, 2022 IL 125959, ¶ 28. Nothing in this record supports any argument that the defendant's sentencing hearing was fundamentally unfair. Accordingly, we honor the forfeiture.

¶ 29     The defendant alternatively argues that trial counsel was ineffective for failure to raise sentencing error claims in his amended motion to withdraw guilty plea. Claims of ineffective assistance of counsel are resolved under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a defendant must demonstrate that counsel's performance was

11

deficient and that such deficient performance substantially prejudiced the defendant. *Id.* at 687. "Because a defendant must satisfy both prongs of the *Strickland* test to prevail, the failure to establish either precludes a finding of ineffective assistance of counsel." *People v. Cherry*, 2016 IL 118728, ¶ 24.

¶ 30   "The failure to file a motion does not establish deficient representation when the motion would have been futile." *People v. Holmes*, 397 Ill. App. 3d 737, 741 (2010). As outlined above, the defendant has failed to establish that the trial court committed any sentencing error. Accordingly, we find that defense counsel's omission of sentencing error issues in the amended motion to withdraw guilty plea was not objectively unreasonable. Therefore, the defendant's ineffective assistance of counsel argument also fails.

¶ 31                                III. CONCLUSION

¶ 32   Because we find that the trial court properly considered factors in aggravation and mitigation at sentencing and that trial counsel did not provide ineffective assistance by failing to pursue a meritless request to reconsider the defendant's sentence, that sentence is affirmed.

¶ 33   Affirmed.