2022 IL App (1st) 210806-U

FIFTH DIVISION
September 9, 2022

No. 1-21-0806

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of Cook County. |
| | ) | |
| v. | ) | 12 CR 20502 |
| | ) | |
| JANSEN AIKENS, | ) | Honorable James B. Linn, |
| | ) | Judge Presiding. |
| Defendant-Appellant. | ) | |

JUSTICE CONNORS delivered the judgment of the court.
Presiding Justice Delort and Justice Mitchell concurred in the judgment.

**ORDER**

*Held:* Trial court did not abuse its discretion in resentencing juvenile defendant to 22 years in prison for attempted murder.

¶ 1     Defendant, Jansen Aikens, appeals from a resentencing hearing at which two concurrent 22-year sentences for two counts of attempted murder were imposed. Aikens contends that this court should reduce his sentence or remand for resentencing because the trial court failed to apply the mandatory juvenile sentencing factors and abused its discretion in resentencing Aikens. For the following reasons, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3      Following a bench trial, Aikens was found guilty of several counts of attempted first degree murder of a peace officer, attempted first degree murder, aggravated discharge of a firearm, and aggravated unlawful use of a weapon, stemming from a 2012 incident where Aikens, who was 17 years old at the time, fired multiple shots at an unmarked police car that contained two police officers.

¶ 4                                             Original Sentencing

¶ 5      At Aikens' sentencing hearing in 2013, Christina Cariglio, a mitigation specialist, submitted a mitigation report. Cariglio testified that Aikens' mother abused drugs and alcohol when she was pregnant and that, when she had another son, Aikens became that boy's parent and protector because their mother was not there for him. They were eventually placed in foster care and later adopted by Deidre Aikens. Cariglio stated that as a teenager, Aikens lived on the streets with his girlfriend for some time, as well as in an apartment she shared with gang members, during which time he joined a gang for protection. When Aikens was a junior in high school, received an early acceptance letter from the Illinois Institute of Technology due to his academic excellence.

¶ 6      Cariglio stated that, since the time of Aikens' arrest, he had cut off all ties with his gang, and a jail guard had informed her that defendant was "the most well-mannered boy" she had ever come across while working in Division 9. Cariglio concluded her mitigation report by stating:

> "I have not yet come across a client so full of potential as [Aikens]. Nor have I
> met a more supportive family than the Aikens family. I have complete faith that
> [Aikens] will rehabilitate and go on to become a successful contributing member
> of our society. [Aikens] is blessed with intelligence, creativity, a kind heart, an
> appreciation for those less fortunate, a terrific support system in his family, and a

2

selflessness that puts most adults to shame. I hope that you will consider all of the information I have provided when deciding [Aikens'] fate."

¶ 7 Deidre Aikens testified that she legally adopted Aikens in 2005 and that he had previously suffered from both physical and sexual abuse. She testified that while he improved in her home, he still exhibited symptoms from his upbringing.

¶ 8 Jeffrey Tabares, a lawyer, testified that he couched Aikens in Little League and mentored him after that. Tabares noted that Aikens was captain of the team because he was understanding towards the younger players and those not as skilled.

¶ 9 In allocution, Aikens apologized for his actions to the court, his family, and the "Chicago Police Department for making their officers feel as though their lives were in danger." Aikens stated that he could "see the impact it has on the people who love me and the position that I put the officers in that night." Aikens stated that he was now able to appreciate the privileges he previously took for granted and planned to be a role model to other kids headed down the wrong path once he served his time.

¶ 10 After hearing the evidence during the sentencing hearing, the trial court noted that the crime was "horrific, extremely violent, [and] extremely dangerous." However, Aikens was young, had no criminal history, and his social history was "quite troubling." The court stated, "The conversation about how much discretion judges should have in sentencing in criminal cases is an active conversation. And that's a conversation perhaps for another day. I will sentence Aikens with what the legislature says I have to work with in this case." The court further noted, "I am mindful that I am going to be sentencing him to more years than his life is now. And it seems to be an unimaginable amount of time especially for a teenage child."

¶ 11    The trial court sentenced him to 20 years in prison for the attempted murder convictions, with an additional mandatory 20-year enhancement for personally discharging a firearm, for a total sentence of 40 years in prison.

¶ 12                                    Direct Appeal

¶ 13    On direct appeal, Aikens argued in part that Illinois' sentencing scheme for attempted murder of a peace officer for a minor violated the proportionate penalties clause of the constitution as applied to him. *People v. Aikens*, 2016 IL App (1st) 133578, ¶ 1. We noted that Aikens was young, had no prior criminal history, had the full potential to rehabilitate as a contributing member of society, and that his social history was troubling. *Id*. ¶ 37. We found that the sentencing scheme at issue, as applied to Aikens, violated the proportionate penalties clause, "as it shocks our evolving standard of moral decency." *Id*. We reversed Aikens' sentence and remanded for resentencing "in line with the new sentencing scheme, without imposition of the mandatory enhancement." *Id*. ¶ 38.

¶ 14                                 Resentencing Hearing

¶ 15    On remand, a new sentencing hearing was held before the same judge that originally sentenced Aikens. Officer Simon Adamiak testified that on the night in question, he was working with officers Georgopoulos and Stevens, when he observed Aikens with members of the Black P. Stone gang in rival gang territory. Officer Georgopoulos exited the unmarked police car and attempted to approach the group. Aikens fled, and Officer Adamiak and Officer Stevens pursued him in the vehicle. Aikens then turned and shot at the vehicle approximately five times. Officer Adamiak testified that there were several bullet holes and broken glass in the vehicle. Both he and his partner fired shots at Aikens. Officer Adamiak testified that at the time of the incident he felt that his life was in jeopardy.

¶ 16     Officer Peter Stevens testified to substantially similar events on the night in question. He remembered feeling trapped in the vehicle during the shooting, and the loud sounds of the impact of the weapons. He had ringing in his ears for days after. He was fearful that he would lose his life. He received mental health treatment as a result of the incident.

¶ 17     Defense counsel noted that Aikens had no incidents in either Cook County jail or the Illinois Department of Corrections since his incarceration.

¶ 18     Aikens then stated that nine years ago he "showed wanton disrespect for the authority." He was immature, selfish, and naïve. During his incarceration, he had years to reflect on his actions and work towards bettering himself. He learned to "become a man, and because of that, I wish to convey how truly sorry I am to officers Adamiak, Georgopoulos, and Stevens." He stated, "I fully support the Chicago Police Department and the actions they take to ensure our safety." He recognized that what he did was "irresponsible and unacceptable, and to this day I thank God nobody was hurt." He stated that the police officers in question "work hard to serve and protect our community each and every day. I had no right to endanger their lives." Aikens further noted that it was incomprehensible to him "the amount of trauma I caused them and their families. I should have dropped the gun. I never should have been in that predicament in the first place."

¶ 19     Aikens took "full responsibility" for his actions and stated that he strived "to be a better asset and no longer a liability" to his family, friends, and community. While incarcerated, he received his GED and worked as a baker and porter. He started taking college courses and wanted to further his studies when released. He sought to become an engineer. He completed the Second Chance Program and became a tutor for Pace to help others get their GEDs. He also finished a restorative justice class offered by DePaul University.

¶ 20    The trial court then noted that it remembered Aikens during trial, and that he was a "very young kid. He was a teenager." The court noted that Aikens was a "grown man now, and everything about him, his demeanor, his attitude, the way he walks in and out of the courtroom, he walks to the podium, and the way he is handling himself is much different than the person I saw then."

¶ 21    The trial court noted that Aikens did not have any prior criminal history as a juvenile or an adult, and that while he had been in jail there had been no incidents that were brought to the court's attention indicating any trouble Aikens was involved in. The trial court stated that it had "different tools to work with now," and was able to consider things about Aikens that it was not able to consider before.

¶ 22    The trial court then sentenced Aikens as follows: "For attempt murder 22 years in the penitentiary. That's concurrent on both counts, Count 7 and 8. [Three] years in the penitentiary that also runs concurrent."

¶ 23    Aikens filed a motion to reconsider, arguing that the sentence was excessive, which the trial court denied. This appeal followed.

¶ 24                              II. ANALYSIS

¶ 25    On appeal, Aikens contends that the trial court abused its discretion in imposing a 22-year sentence because the court failed "to even mention the mandatory mitigating juvenile facts, let alone consider how those factors affected [Aikens'] sentence." Aikens also argues that the trial court abused its discretion in sentencing him, given the strong mitigating evidence presented, his rehabilitative potential, and the fact that no one was injured during the incident. The State responds that the trial court properly considered the relevant statutory factors, and the trial court did not abuse its discretion in resentencing Aikens.

¶ 26                                    Plain Error

¶ 27    As an initial matter, the State notes, and Aikens concedes, that the issue of whether the trial court considered certain mitigating factors in sentencing was not preserved for appeal. To preserve a claim "of sentencing error, both a contemporaneous objection and a written post-sentencing motion raising the issue are required." *People v. Hillier*, 237 Ill. 2d 539, 544 (2010). Requiring a written post-sentencing motion allows the trial court the opportunity to review a defendant's contention of sentencing errors and saves the delay and expense inherent in appeal if they are meritorious. *People v. Reed*, 177 Ill. 2d 389, 393-94 (1997). However, plain error review is appropriate for non-preserved sentencing errors when 1) the evidence at the sentencing hearing was closely balanced, or 2) the error was so egregious as to deny the defendant a fair sentencing hearing. *Hillier*, 237 Ill. 2d at 545. "The first analytical step under the plain error rule is to determine whether there was a clear or obvious error." *People v. Moon*, 2022 IL 125959, ¶ 22. Here we find there was not.

¶ 28                              New Sentence Upon Remand

¶ 29    The United States Constitution prohibits "cruel and unusual" punishment. U.S. Const., amend. VIII. "Inherent in that prohibition is the concept of proportionality." *People v. Holman*, 2017 IL 120655, ¶ 33. Criminal punishment should be "graduate and proportioned to both the offender and the offense." *People v. Davis*, 2014 IL 115595, ¶ 18. "When the offender is a juvenile and the offense is serious, there is a genuine risk of disproportionate punishment." *Holman*, 2017 120655, ¶ 33. "Because juveniles have diminished culpability and greater prospects for reform, *** 'they are less deserving of the most severe punishments.' " *Miller v. Alabama*, 567 U.S. 460, 471 (2012) (quoting *Graham v. Florida*, 560 U.S. 48, 68 (2010)). The United States Supreme Court has emphasized that the distinctive attributes of youth diminish

penological justifications for imposing the harshest sentences on juvenile offenders, even when they commit terrible crimes. See *Graham*, 560 U.S. at 71.

¶ 30    In 2016, the Illinois legislature enacted section 5-4.5-105 of the Unified Code of Corrections (Code) (730 ILCS 5/5-4.5-105) (West 2016)), which provides a new sentencing scheme for juveniles under 18 years of age. The new statute requires the sentencing judge to consider various factors before sentencing a young offender. Specifically, it reads:

"(a) On or after the effective date of this amendatory Act of the 99th General Assembly, where a person commits an offense and the person is under 18 years of age at the time of the commission of the offense, the court, at the sentencing hearing conducted under Section 5-4-1, shall consider the following additional factors in mitigation in determining the appropriate sentence:

(1) the person's age, impetuosity, and level of maturity at the time of the offense, including the ability to consider risks and consequences of behavior, and the presence of cognitive or developmental disability, or both, if any;

(2) whether the person was subjected to outside pressure, including peer pressure, familial pressure, or negative influences;

(3) the person's family, home environment, educational and social background, including any history of parental neglect, physical abuse, or other childhood trauma;

(4) the person's potential for rehabilitation or evidence of rehabilitation, or both;

8

(5) the circumstances of the offense;

(6) the person's degree of participation and specific role in the offense, including the level of planning by the defendant before the offense;

(7) whether the person was able to meaningfully participate in his or her defense;

(8) the person's prior juvenile or criminal history; and

(9) any other information the court finds relevant and reliable, including an expression of remorse, if appropriate. However, if the person, on advice of counsel chooses not to make a statement, the court shall not consider a lack of an expression of remorse as an aggravating factor." 730 ILCS 5/5-4.5-105 (West 2018).

¶ 31    Where the record does not indicate that the trial court considered these factors, the case should be remanded for a new sentencing hearing. See *People v. Smolley*, 2018 IL App (3d) 150577, ¶ 21 (case remanded for a new sentencing hearing where the record did not indicate that the trial court considered defendant's characteristics of youth); *People v. Ortiz*, 2016 IL App (1st) 133294, ¶ 25 (although the trial court considered defendant's young age and his personal history, the record did not indicate that the court considered the corresponding characteristics of his youth). While both *Smolley* and *Ortiz* discussed defendants who were facing a *de facto* life sentence, the same reasoning applies here. The juvenile sentencing statute requires a trial court to consider certain factors at a sentencing hearing, and where the record shows that a trial court did not do that, a remand is appropriate.

¶ 32    However, a trial court's sentence is accorded great deference and a reviewing court will not reverse it absent an abuse of discretion. *People v. Butler*, 2013 IL App (1st) 120923, ¶ 30. "A sentence which falls within the statutory range is not an abuse of discretion unless it is manifestly disproportionate to the nature of the offense." *People v. Jackson*, 375 Ill. App. 3d 796, 800 (2007).

¶ 33    Absent some affirmative indication to the contrary, other than the sentence itself, we presume the trial court considered all mitigating evidence before it. *People v. Jones*, 2014 IL App (1st) 120927, ¶ 55. Because the trial court, having observed the proceedings, is in the best position to weigh the relevant sentencing factors, we will not substitute our judgment for that of the trial court simply because we would have balanced the appropriate sentencing factors differently. *People v. Alexander*, 239 Ill. 2d 205, 213 (2010).

¶ 34    Aikens was sentenced to 22 years in prison for attempted murder, which falls within the statutory sentencing range of 6 to 30 years. See 730 ILCS 5/8-4(c)(1) (West 2016) (attempted first degree murder is sentences as Class X felony); 730 ILCS 5/5-8-1(a)(3) (West 2016) (sentence for Class X felony is 6 to 30 years imprisonment). The trial court, using its discretion, declined to impose the firearm enhancement of 20 years. See 730 ILCS 5/5-4.5-105(b) (West 2016) (the court may decline to impose any otherwise applicable sentencing enhancement based upon firearm possession). Thus, we must presume his sentence was proper, absent some indication to the contrary. *People v. Burton*, 2015 IL App (1st) 131600, ¶ 36.

¶ 35    Here, the record reveals that the trial court acknowledged on remand that it had new tools to work with this time around when sentencing Aikens. During resentencing, defense counsel relied on evidence that was presented at the original sentencing hearing, including the testimony of a mitigation specialist who testified as to Aikens' early home life. A presentencing report

noted Aikens' difficult upbringing, his experiences in foster care, his educational background, and his lack of a prior criminal history. The trial court expressly stated that it considered "all the mitigation." It stated:

> "I remember Mr. Aikens then. He was a very young kid. He was a teenager. He's a grown man now, and everything about him. His demeanor, his attitude, the way he walks in and out of the courtroom, he walks to the podium, and the way he is handling himself is much different than the person I saw then."

¶ 36    The PSI showed that Aikens was the only person arrested in this matter, and that no one else played a role in the shooting. Defense counsel highlighted that Aikens had a "tough upbringing until he had a good fortune of being adopted by his mother *** who is again present before the Court and here to support his family."

¶ 37    Aikens discussed his accomplishments while imprisoned, and the trial court commented on it, stating:

> "I find out that the period of time he has been in jail – we are talking about over eight years now – there has been no incidents that were brought to my attention indicating any trouble that he has created for his fellow inmates or for staff at any facility that he has been in. Nothing like that has happened. I see some certificates, and I see that he actually has some plans for the future in a positive nature that he would like to do."

¶ 38    Regarding the crime itself, the court stated:

> "Do I think this is a serious crime? Oh, absolutely. It was then. It is now. I can't imagine what it's like to be shot at by somebody in those circumstances, and I can

understand how that – the pain from that may linger, whatever type of pain it is.

The trauma of that may linger."

¶ 39    The trial court acknowledged that Aikens had no other criminal history. And finally, Aikens made a lengthy statement of remorse at the end of the sentencing re-hearing.

¶ 40    We find that the record shows that the trial court was presented with evidence of the mitigating factors listed in section 5-4.5-105. While the trial court did not specifically address every factor, it is not required to recite or assign a value to each mitigating and aggravating factor in the record. See *People v. Villalobos*, 2020 IL App (1st) 171512, ¶ 74 (finding that when considering the statutory factors in section 5-4.5-105, the trial court need not articulate each and every factor it considered in imposing a sentence). Accordingly, we find that the trial court did not abuse its discretion in sentencing Aikens and affirm his 22-year sentence.

¶ 41    Since we find that the trial court was presented with evidence of the sentencing factors contained in section 5-4.5-105, and it considered that evidence in imposing Aikens' sentence, we need not consider Aikens' claim that defense counsel was ineffective for failing to raise this issue during sentencing or in a posttrial motion. Aikens was not prejudiced where the court considered those statutory factors when it sentenced him.

¶ 42                                    III. CONCLUSION

¶ 43    For the foregoing reasons, we affirm the sentence of the circuit court of Cook County.

¶ 44    Sentence affirmed.